879 P.2d 1217

**Bacilio CABAZOS, Claimant–Appellee,**

v.

**CALLOWAY CONSTRUCTION, Employer, and The Travelers Insurance Companies, Insurer, Respondents–Appellants.**

**No. 15443.**

Court of Appeals of New Mexico.

June 30, 1994.

Certiorari Denied Aug. 10, 1994.

Nancy Kantrowitz, Law Offices of Simon & Oppenheimer, Santa Fe, for claimant-appellee.

Kenneth B. Baca, Baca, Coryell, Gershon & Hall, P.A., Santa Fe, for respondents-appellants.

*OPINION*

DONNELLY, Judge.

In this case we are required to determine the proper interpretation of the statutory provision authorizing the payment of partial lump-sum workers' compensation awards for the payment of debts that have accumulated during a worker's disability. *See* NMSA 1978, § 52–5–12(C) (Repl.Pamp.1991) (Effective January 1, 1991).

Employer and Insurer (Respondents) appeal from the order of the Workers' Compensation Judge (Judge) approving a partial lump-sum payment and determining the number of weeks that Respondents are required to make additional payments of benefits. Our first and second calendar notices proposed summary affirmance in favor of Bacilio Cabazos (Claimant). Respondents have filed a timely memorandum in opposition to the second calendar notice. We are not persuaded by Respondent's arguments, and we affirm the order approving the partial lump-sum payment and the computation of the number of remaining weekly payments.

The dispositive facts are not contested. Claimant, a bricklayer, was injured on February 14, 1991, in the course and scope of his employment. He reached maximum medical improvement on July 29, 1992, at which time he was determined to have an impairment rating of twelve percent (12%) of the whole person. Claimant was fifty-eight years old, had a residual physical capacity of light duty, and was unable to return to his occupation as a bricklayer, a heavy-duty position that he had held for thirty-four years. Based on these factors, Claimant was determined to have a disability rating of thirty-six percent.

On October 15, 1993, pursuant to Section 52–5–12(C), Claimant filed a petition for a partial lump-sum payment in the amount of $8,179.87 to pay debts that had accumulated during his disability. Attached to his petition were documents indicating the nature and extent of the debts and the dates they were incurred. The largest debt was $7200 for rent arrearages; additional amounts were

owed to utility companies that were threatening to discontinue service if payment of past due bills was not forthcoming. The order approving the partial lump-sum payment was filed on October 18, 1993.

Subsequently, a dispute developed between Claimant and Respondents concerning the method of payment of the partial lump-sum amount, and the amount and duration of the periodic payments that remained after the payment of the partial lump-sum. Respondents contended that Section 52–5–12 required that workers' compensation benefits should be reduced from benefits based on the disability rating to benefits based on the impairment rating. The Judge rejected this argument, and Respondents have appealed.

The pertinent portions of Section 52–5–12 read as follows:

A. It is stated policy for the administration of the Workers' Compensation Act [Chapter 52, Article 1 NMSA 1978] ... that it is in the best interest of the injured worker or disabled employee that he receive benefit payments on a periodic basis. Except as provided in Subsections B, C and D of this section, lump-sum payments in exchange for the release of the employer from liability for future payments of compensation or medical benefits shall not be allowed.

B. With the approval of the workers' compensation judge, a worker may elect to receive compensation benefits to which he is entitled in a lump sum if he has returned to work for at least six months, earning at least eighty percent of the average weekly wage he earned at the time of injury or disablement. *If a worker receives his benefit income in a lump sum, he is not entitled to any additional benefit income for the compensable injury or disablement and he shall only receive that portion of the benefit income that is attributable to the impairment rating as determined in Section 52–1–24 NMSA 1978....*

C. After maximum medical improvement and with the approval of the workers' compensation judge, a worker may elect to receive a partial lump-sum payment of workers' compensation benefits for the sole purpose of paying debts that may have accumulated during the course of the injured or disabled worker's disability.

D. If an insurer pays a lump-sum payment to an injured or disabled worker without the approval of a workers' compensation judge and if, at a later date, benefits are due for the injured or disabled worker's claim, the insurer alone shall be liable for that claim and shall not in any manner, including rate determinations and the employer's experience modifier, pass on the cost of the benefits due to the employer. [Emphasis added.]

Respondents contend that the underlined sentence in Subsection B should also be applied to partial lump-sum payments made under Subsection C.

Respondents do not argue that Section 52–5–12 is ambiguous; instead, they argue that this Court should construe Subsection B together with Subsection C, because this is more consistent with the legislative policy of discouraging lump-sum payments of benefits. We note, however, that if a statute is not ambiguous, there is no reason to resort to principles of construction or considerations of policy. *See State ex rel. Helman v. Gallegos,* 117 N.M. 346, 352, 871 P.2d 1352, 1358 (1994); *V.P. Clarence Co. v. Colgate,* 115 N.M. 471, 473, 853 P.2d 722, 724 (1993); *State ex rel. Stratton v. Serna,* 109 N.M. 1, 3, 780 P.2d 1148, 1150 (1989). "A statute is ambiguous when it can be understood by reasonably well-informed persons in two or more different senses." *State v. Elmquist,* 114 N.M. 551, 552, 844 P.2d 131, 132 (Ct.App. 1992). The determination of whether the language of a statute is ambiguous is a question of law for the Court to decide. *See New Mexico State Bd. of Educ. v. Board of Educ. of Alamogordo Pub. Sch. Dist. No. 1,* 95 N.M. 588, 590, 624 P.2d 530, 532 (1981).

We turn now to an examination of the pertinent language of Section 52–5–12. Subsection A of the statute declares that lump-sum payments of benefits are against legisla-

tive policy except to the extent that they are specifically authorized in Subsections B, C, and D. Reading the statute in its entirety, we believe that the fact that three different subsections concern lump-sum payments indicates that three distinctly different situations are involved.

Subsection B authorizes the worker to elect and the Judge to approve payment of all compensation benefits due the worker in a lump-sum (full lump-sum payment) when the worker has returned to work, has worked at least six months, and is earning at least eighty percent of the pre-injury wage. Thus, full lump-sum payments are restricted to workers who have substantially, though perhaps not fully, recovered, physically and economically, from the effects of the injury or disability. The sentence Respondents rely on discourages full lump-sum payments even for these workers by providing that the disability rating will be reduced to the impairment rating.

Subsection C authorizes a worker to elect and the Judge to approve a partial lump-sum payment of benefits for any disabled worker once the worker has reached maximum medical improvement. However, the amount of such a partial lump-sum is restricted to the amount necessary to pay debts that have accumulated during the disability. Thus, this subsection, by its express terms, allows workers who have not returned to work or indeed may never be able to return to work to receive a large enough lump-sum payment of benefits to liquidate debts which have accumulated during the course of the worker's disability.

Subsection D protects the employer when its insurer makes an unauthorized lump-sum payment to the worker. This subsection has no bearing on the issue raised on this appeal.

Respondents contend that there is no reason why the legislature would apply a financial disincentive to workers who receive full lump-sum payments but not to workers receiving partial lump-sum payments. We disagree. The chief reason not to grant a lump-sum benefit is that "it creates a risk that the worker will need to rely on welfare during the time that periodic disability payments would otherwise be available." *Riesenecker v. Arkansas Best Freight Sys.*, 110 N.M. 654, 655, 798 P.2d 1040, 1041 (Ct.App.1990), *judgment vacated on other grounds*, 110 N.M. 451, 796 P.2d 1147 (Ct.App.1990); *see also Codling v. Aztec Well Servicing Co.*, 89 N.M. 213, 215, 549 P.2d 628, 630 (Ct.App.1976). Subsections B and C simply recognize when that reason does not apply. A worker who qualifies for a lump sum under Subsection B is earning a wage close to what the worker was earning prior to the injury, so there is a markedly lower risk that the worker will need to rely on welfare. In that circumstance, the worker may decide, for purposes of convenience, to seek a lump sum. Because the purpose of the lump sum is convenience, rather than need, it is appropriate to compute benefits for the worker the same as if the worker were earning a wage equal to or greater than the pre-injury wage, in which case the worker's permanent partial disability rating is equal to impairment. *See* NMSA 1978, § 52–1–26(D) (Repl.Pamp.1991) (Effective January 1, 1991).

Subsection C, on the other hand, deals with the exceptional case when a lump-sum payment, rather than periodic payment, may be necessary to avoid extreme hardship. Even though compensation payments are shielded from creditors, NMSA 1978, § 52–1–52 (Repl.Pamp.1991), payments to some creditors, such as a mortgagee, may be necessary to keep the worker from being thrown out into the cold. Because the purpose of such a payment is need, rather than convenience, there is no reason to reduce benefits to the level calculated based solely on impairment.

In short, we think that by enacting Subsection C the legislature struck a balance between our traditional policy of discouraging lump-sum payments and the economic difficulties faced by injured and disabled workers who, because of injury or disability, are unable to pay certain debts.

Finally, Respondents argue that our interpretation of Section 52–5–12(C) will lead

to systematic abuse of the system by workers who will be able to obtain a full lump-sum payment of benefits through the simple expedient of multiple partial lump-sum payments without being subject to the reduction in benefits contemplated by Subsection B. Respondents are correct that partial lump-sum payments could be abused if workers do not use the money to pay debts, or if they use the mechanism of partial lump-sum payments to attempt to maintain a living standard contrary to the worker's income prospects, thereby necessitating a need for welfare benefits. Although we agree with Respondents that Subsection C does not prohibit multiple partial lump-sum payments, provided that those payments are in an amount necessary to pay debts accumulated during the period of disability, nevertheless applications for such payments are subject to the limitations expressly set forth in Section 52–5–12(C), and the scrutiny and approval of a workers' compensation judge based upon the facts of each individual case. Not only must the lump-sum payment agreement be fair and equitable, but it also must be "consistent with provisions of the Workers' Compensation Act." NMSA 1978, § 52–5–14(A) (Repl. Pamp.1991). Thus, the judge can oversee the agreement to ensure that payments are actually made to the worker's creditors and can reject an agreement if it would undercut the policy behind restrictions on lump-sum payments. Moreover, this Court has previously reversed an order approving a lump-sum payment that was denominated a partial payment when in fact it was a full payment of benefits. *See Quintana v. Ilfelds*, 116 N.M. 836, 838, 867 P.2d 1218, 1220 (Ct.App. 1993).

In sum, we think that the different statutory provisions of Section 52–5–12 applicable to full and partial lump-sum payments, represent a legislative balancing of competing interests. Under these circumstances, we will not read into the language of Subsection C a limitation applicable to full lump-sum payments. *See Helman*, 117 N.M. at 352, 871 P.2d at 1358. We hold that the language of Section 52–5–12, at issue in this case, is not ambiguous, and thus there is no need to resort to construction of the statute.

The order approving partial lump-sum payment and determining the number of weeks that Respondents shall continue paying benefits is affirmed.

IT IS SO ORDERED.

MINZNER, C.J., and HARTZ, J., concur.