1999-NMCA-140

992 P.2d 313

**Peter HERRERA, Worker–Appellant,**

v.

**QUALITY IMPORTS, self-insured, Employer–Appellee.**

**No. 19,992.**

Court of Appeals of New Mexico.

Oct. 7, 1999.

Rod Dunn, Dunn Law Offices, Albuquerque, for Appellant.

Timothy S. Hale, Riley, Shane & Hale, P.A., Albuquerque, for Appellee.

## OPINION

DONNELLY, Judge:

{1} Worker Peter Herrera appeals from the Workers' Compensation Judge's (WCJ's) order reducing Worker's compensation to be paid by Employer Quality Imports based upon Worker's receipt of a college degree after the original compensation order was entered. Worker raises a single issue on appeal: whether the WCJ erred in changing the NMSA 1978, § 52–1–26.3 (1990, effective Jan. 1, 1991), statutory modifier based upon a change in Worker's educational status that occurred after the trial. For the reasons discussed herein, we reverse.

## FACTS

{2} On March 29, 1996, Worker was injured while working as a sales representative for Respondent. On December 10, 1997, following a trial on the merits, the WCJ awarded permanent partial disability benefits (PPD) based upon a 17% PPD rating. The 17% rating determined by the WCJ was based upon a 5% permanent impairment, plus twelve additional points for age, education, experience, training, and residual physical capacity. The WCJ determined that, as of the date of the trial, Worker had a high school education and was entitled to no points for an education modifier pursuant to Section 52–1–26.3(B)(3).

{3} On September 29, 1998, Employer filed a motion under NMSA 1978, §§ 52–1–56 and 52–5–9 (1989), to reduce the 17% disability rating based upon evidence that Worker had recently obtained a college degree from the University of New Mexico. Employer argued that because Worker had received a college degree, his benefits should be reduced accordingly based upon the statutory modifier for completion of a college degree set out in Section 52–1–26.3(B)(4). No evidence was presented indicating that Worker's medical or physical condition had changed. Thus, the sole basis for the change was Worker's receipt of a college degree. The WCJ granted Employer's motion pursuant to Section 52–1–56, and reduced Worker's benefit to 13%. The WCJ did not consider whether modification would be warranted under Section 52–5–9(B); instead, the only ground relied upon by the WCJ for the modification was Section 52–1–56. Thus, we do not address the authority of a WCJ to modify a prior compensation order under Section 52–5–9.[1]

---

1. Section 52–5–9(B) provides that a WCJ "upon application of a party in interest filed ... within

*MODIFICATION OF COMPENSATION ORDER*

{4} Worker contends that the WCJ erred in modifying its prior workers' compensation order under Section 52–1–56 based solely upon a change in the education modifier. The WCJ's interpretation of Sections 52–1–26.3 and 52–1–56 is an issue of law, which we review de novo. *See Dugie v. Cameron,* 1999–NMSC–002, ¶ 5, 126 N.M. 433, 971 P.2d 390; *State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). Section 52–1–56 was enacted as a mechanism for the WCJ to alter a compensation award based upon the increase or decrease of a worker's "disability." *See, e.g., Holliday v. Talk of the Town Inc.,* 98 N.M. 354, 356, 648 P.2d 812, 814 (Ct.App. 1982) (decided under similar provision of prior law).

{5} On November 13, 1998, the WCJ issued the order modifying the original compensation order. The new order contained the following findings:

1. A Compensation Order was entered on December 10, 1997. At that time, the Workers [sic] Compensation Administration Judge determined that Worker had completed a high school diploma and was awarded zero points pursuant to § 52–1–26.3(4). Subsequently, on May 16, 1998, Worker received his college diploma. As a result of Worker receiving his college diploma, Worker's permanent partial disability benefits pursuant to § 52–1–26 et seq. are modified and reduced and changed from 17% permanent partial disability benefits to 13% permanent partial disability benefits effective September 16, 1998.

2. The Workers [sic] Compensation Administration has jurisdiction to modify the Compensation Order pursuant to § 52–1–56 and so exercises its jurisdiction.

3. Employer/Insurer is entitled to credit for overpayment from September 16, 1998 to October 20, 1998, at a 4% overpayment which is to be taken off the tail end of Worker's remaining entitlement.

{6} The pivotal question for our determination is whether the term "disability," as used in Section 52–1–56, refers to a worker's physical condition, or whether in enacting Section 52–1–26.3 and including an education modifier in the calculus used to determine disability rating, the Legislature meant to make a worker's education at any given time an integral part of his "disability."

{7} In *Glover v. Sherman Power Tongs,* 94 N.M. 587, 613 P.2d 729 (Ct.App.1980) (decided under a substantially similar provision of prior law), we stated that the predecessor to the present Section 52–1–56 was enacted in order to meet the changes that occur in a worker's physical condition. *See id.* at 590, 613 P.2d at 732. We believe that the plain meaning of the term "disability" refers to a physical condition. The statute defines "partial disability" as "a *condition* whereby a worker, *by reason of injury arising out of and in the course of employment,* suffers a permanent impairment." NMSA 1978, § 52–1–26(B) (1990, effective Jan. 1, 1991) (emphasis added). *See State ex rel. Stratton v. Serna,* 109 N.M. 1, 3, 780 P.2d 1148, 1150 (1989) ("Statutory language should be interpreted literally. Where there is no ambiguity, there is no room for alternative interpretation."). We do not believe that a worker's education level can be equated with the term "disability," since education cannot be an injurious condition "arising out of and in the course of employment." Section 52–1–26.

{8} Moreover, Section 52–1–56 specifically states that the WCJ may set a time

two years after the date of the last payment or the denial of benefits" may modify a compensation order on the following grounds:
   (1) change in condition;
   (2) mistake, inadvertence, surprise or excusable neglect;
   (3) clerical error or mistake in mathematical calculations;
   (4) newly discovered evidence which by due diligence could not have been discovered prior to the issuance of the compensation order;
   (5) fraud, misrepresentation or other misconduct of an adverse party;
   (6) the compensation order is void; or
   (7) the compensation order has been satisfied, released or discharged or a prior order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the order should have prospective application.

for hearing "upon the issue of claimant's recovery." In using the term "recovery," it is apparent that the Legislature intended to refer to a worker's physical condition. Additionally, we presume that the Legislature was aware of our interpretation of the term "disability" in *Glover* when it amended Section 52–1–56 in 1987 and 1989, and when it enacted Section 52–1–26.3 in 1990. *See State ex rel. Human Servs. Dep't In re Kira M.,* 118 N.M. 563, 569, 883 P.2d 149, 155 (1994) (stating that Legislature is presumed to know "of existing law when it enacts legislation"). The same is true of the disability modifiers contained in NMSA 1978, §§ 52–1–26.2 and –26.4 (1990, effective Jan. 1, 1991); the Legislature could have included them in the definition of "disability" had it chosen to.

{9} The reason we believe the Legislature did not intend inclusion of the modifiers becomes clear when one considers the practical effect of making the physical capacity modification of Section 52–1–26.4 part of the definition of "disability" and therefore subject to modification under Section 52–1–56. Employers and workers would be subject to frequent changes in compensation as injured workers' abilities to lift weight changed over time. The same issue would arise if the age modification of Section 52–1–26.2 were subject to Section 52–1–56. Thus, we conclude that if the Legislature had meant to allow the WCJ to alter the education modifier under Section 52–1–56, it would have amended Section 52–1–56 to indicate this intent, and referred to the education modifier, at the time that Section 52–1–26.3 was enacted in 1990. Under NMSA 1978, § 52–5–1 (1990, effective Jan. 1, 1991), the Workers' Compensation Act is not to be construed liberally in favor of either Worker or Employer.

■ {10} Next, we address Employer's argument that the WCJ should have assigned Worker a minus one education point at the time the initial compensation order was entered because, at the time of the initial compensation order, Worker had already completed enough credits for a college degree, but did not apply to graduate until the next year. The record also reflects that Employer never pursued an appeal after the entry of the December 10, 1997, compensa-

tion order. Our review of the record indicates that Employer and Worker both agreed that Worker had not completed his education at the time of the hearing on the claim, and Employer specifically stated in its proposed findings of fact and conclusions of law that Worker was entitled to zero education points. Employer advanced no argument that Worker should have been assigned a minus one education modifier. Therefore, because Employer never filed an appeal from the December 10, 1997, compensation order and never alerted the WCJ to this issue prior to the entry of the original order, thereby failing to preserve the issue, the original compensation order awarding Worker a 17% disability rating was final and not subject to review in this appeal. *See Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) (stating that "[t]o preserve an issue for review" a ruling must have been invoked at the trial court); *Platero v. Jones,* 83 N.M. 261, 261–62, 490 P.2d 1234, 1234–35 (Ct.App.1971) (stating that matter may not be raised by party on appeal if the trial court adopted a finding in accordance with matter that party requested).

{11} Thus, we conclude that the education modifier in this case was correctly assigned by the WCJ as zero at the time of the initial December 10, 1997, compensation order. *Cf. Levario v. Ysidro Villareal Labor Agency,* 120 N.M. 734, 739, 906 P.2d 266, 271 (Ct.App.1995) (determining that in contested cases, the age modification under Section 56–1–26.2(A) shall be based upon the age of the worker at the time that the WCJ makes a judicial determination awarding compensation as opposed to the time that the worker reaches maximum medical improvement).

*CONCLUSION*

{12} The term "disability" as defined in Section 52–1–56 means physical condition and does not refer to a change in a worker's educational status. Accordingly, we hold that Section 52–1–56 does not give the WCJ authority to modify a worker's compensation award based solely upon a subsequent change in a worker's educational status. The WCJ's order modifying compensation order is reversed and the initial December 10, 1997,

compensation order is directed to be reinstated.

{13} On remand, the WCJ shall award Worker appropriate attorney fees for the services of his attorney incident to this appeal.

{14} IT IS SO ORDERED.

APODACA and BUSTAMANTE, JJ., concur.

