2002-NMCA-078

52 P.3d 980

Juan SOUTER, Worker–Appellant,

v.

ANCAE HEATING AND AIR CONDI-
TIONING, and Builder's Trust of New
Mexico, Employer/Insurer–Appellees.

No. 21,799.

Court of Appeals of New Mexico.

May 30, 2002.

Rod Dunn, Rio Rancho, NM, for Appellant.

Paul Maestas, Silva, Rieder & Maestas, P.C., Albuquerque, NM, for Appellees.

## OPINION

CASTILLO, Judge.

{1} Juan Souter (Worker) appeals from an order of the Workers' Compensation Judge (WCJ) denying Worker total temporary disability (TTD) benefits from Ancae Heating and Air Conditioning and its insurance carrier (Employer). Worker seeks TTD benefits for the period during which he was recovering from back surgery after suffering a recurrence of a work-related injury. We reverse the WCJ's dismissal of Worker's claim and remand this matter to the WCJ to determine the amount of TTD benefits, attorney fees, and costs to be paid by Employer.

## BACKGROUND

{2} In July 1994, Worker injured his back and timely filed complaints for TTD and permanent partial disability (PPD) benefits. In October 1995, the Workers' Compensation Administration (WCA) entered a recommended resolution for benefits (1995 Resolution), which all parties accepted. Pursuant to the 1995 Resolution, Worker was entitled to fifty weeks of TTD and 450 weeks of PPD benefits for a total of 500 weeks of benefits.

{3} Eleven times between July 1995 and April 1997, Worker petitioned the WCA for approval of partial lump-sum payments for debt, pursuant to NMSA 1978, § 52–5–12(C) (1993). With one exception not material to this appeal, the WCA approved the partial lump-sum payments. The second to last order entered on November 18, 1996 (November 1996 Order), unlike the other orders, contained a provision to the effect that Employer would have no further obligation to provide disability benefits to Worker even if his medical condition worsened. Overall, the combined total of lump-sum payments and PPD benefits that Worker received totaled the monetary equivalent of 450 weeks of PPD as set out in the 1995 Resolution.

{4} In December 1998, approximately fifteen months after Worker received his last PPD payment but within the 500 week benefit period provided for in the 1995 Resolution, Worker's back pain returned. In early February 1999, Worker underwent corrective surgery for a herniated disc and reached maximum medical improvement (MMI) on August 9, 1999. Employer paid for the surgery but denied Worker's request for any additional TTD payments.

{5} On August 23, 1999, Worker filed a complaint (1999 Complaint) with the WCA to reopen the 1995 Resolution based on a change in condition. Worker sought TTD benefits for the thirty-two week period from the date his back pain returned to his MMI after surgery, less the PPD benefits already paid. Worker sought no additional PPD benefits.

{6} After formal hearing, the WCJ held that Worker's back problems arising in December 1998 were causally related to the July 1994 work-related back injury and Worker was temporarily totally disabled within the meaning of the Workers' Compensation Act, NMSA 1978, § 52–1–1 (1987) (Act) for the thirty-two week period. However, the WCJ also determined that Worker was not entitled to additional TTD benefits and dismissed Worker's 1999 Complaint with prejudice. The dismissal was based on several findings summarized as follows: (1) the November 1996 Order was valid and binding, therefore, the doctrines of law of the case

and release barred Worker from seeking additional TTD benefits; (2) Worker had "exhausted" his entitlement to benefits; (3) Worker's receipt of 500 weeks of TTD and PPD payments barred Worker from seeking further benefits after the statutory 500 weeks worth of payments had been made; and (4) Worker's challenge to the November 1996 Order was untimely under NMSA 1978, § 52–5–9 (1989).

{7} Worker raises eight issues on appeal. We have reorganized and combined the issues and will address them as follows: (1) Section 52–5–12 and the effect of the language in the November 1996 Order; (2) whether Worker "exhausted" his right to further benefits or is otherwise barred from seeking increased benefits; (3) whether the WCJ erred in not awarding Worker additional TTD benefits; and (4) whether Section 52–5–9(B) precluded modification of Worker's benefits. We hold in Worker's favor on all of these issues. Accordingly, Worker's challenge to the WCJ's exclusion of Employer's attorney as a witness is rendered moot.

### DISCUSSION

#### I. Section 52–5–12 and the Effect of the November 1996 Order

▆▆▆ {8} The November 1996 Order included the following language:

> IT IS FURTHER ORDERED that, upon making the payments outlined above, Employer shall have no further obligation to provide Worker workers' compensation disability benefits of any nature whatsoever, even if the Worker's medical condition worsens, as a result of Worker's July 1, 1994 accidental injury while working for Employer, Ancae Heating and Air.

For convenience, we shall refer to this paragraph as the Further Benefits Provision. The November 1996 Order was the only lump-sum payment order prepared by Employer's attorney. Worker was not represented by counsel in connection with the November 1996 Order. Worker argued below and now argues on appeal that this provision violates Section 52–5–12(A) by purporting to release Employer from liability for further benefit payments when a partial lump-sum payment is made. The WCJ's interpretation of Section 52–5–12 is an issue of law that we review de novo. *See Herrera v. Quality Imports,* 1999–NMCA–140, ¶ 4, 128 N.M. 300, 992 P.2d 313.

{9} To evaluate the effect of the Further Benefits Provision we must determine whether the Act allows a worker to release an employer from liability for future compensation, even if the worker's condition worsens, in exchange for partial lump-sum payment for debt. Section 52–5–12 of the Act governs lump-sum payments and provides in pertinent part:

> A. ... Except as provided in Subsections B, C and D of this section, lump-sum payments in exchange for the release of the employer from liability for future payments of compensation or medical benefits shall not be allowed.

> B. With the approval of the workers' compensation judge, a worker may elect to receive compensation benefits to which he is entitled in a lump sum if he has returned to work for at least six months, earning at least eighty percent of the average weekly wage he earned at the time of injury or disablement. If a worker receives his benefit income in a lump sum, he is not entitled to any additional benefit income for the compensable injury or disablement and he shall only receive that portion of the benefit income that is attributable to the impairment rating as determined in Section 52–1–24 NMSA 1978....

> C. After maximum medical improvement and with the approval of the workers' compensation judge, a worker may elect to receive a partial lump-sum payment of workers' compensation benefits for the sole purpose of paying debts that may have accumulated during the course of the injured or disabled workers' disability....

{10} Subsection (A) prohibits any lump-sum payments in exchange for release of liability for benefits except as provided in Subsections (B), (C), and (D). Only Subsection (B) expressly provides that a worker who receives a total lump-sum payment is not entitled to "any additional benefit income for the compensable injury or disablement." In contrast, Subsection (C) relating to partial lump sums contains no language releasing an

employer from liability for further benefits. Subsection (D) concerns lump-sum payments made without WCJ approval and is not relevant here.

{11} This Court has addressed the relationship between Subsections (A), (B), and (C) of Section 52–5–12 on two occasions. In *Quintana v. Ilfelds,* 116 N.M. 836, 838, 867 P.2d 1218, 1220 (Ct.App.1993), we set aside a lump-sum payment under which a worker had been paid all of his remaining benefits because the worker did not meet eligibility requirements to receive a full lump-sum payment under Subsection (B). We noted but did not resolve the question of whether there can be a release for further liability in the event of a partial lump-sum award. In *Cabazos v. Calloway Constr.,* 118 N.M. 198, 879 P.2d 1217 (Ct.App.1994), we held that language in Section 52–5–12(B) (full lump-sum payment) did not limit certain benefits paid under Section 52–5–12(C) (partial lump-sum payment). *Cabazos* involved a dispute that arose between a worker and an employer/insurer about the amount of benefits payable to the worker after he received approval for a partial lump-sum payment under Subsection (C). The employer argued that the calculation of partial lump-sum payments allowed by Subsection (C) should be reduced based on an impairment rating as required for total lump-sum payments in Subsection (B).

{12} In rejecting Employer's argument, we observed that full lump-sum payments are restricted to workers who have recovered substantially from their injuries and are primarily for convenience, while partial lump-sum payments are restricted to the amount necessary to pay accumulated debts of workers who may never be able to return to work and are based on need. *Cabazos,* 118 N.M. at 201, 879 P.2d at 1220. We concluded that the distinct statutory provisions of Section 52–5–12 applicable to full and partial lump-sum payments represent a legislative balancing of the competing interests between the policy of discouraging lump-sum payments and the economic difficulties faced by workers who cannot pay debts because of injury or disability. *Id.* at 201–02, 879 P.2d at 1220–21. Therefore, we declined to "read

into the language of Subsection C a limitation applicable to full lump-sum payments." *Id.* at 202, 879 P.2d at 1221.

{13} In construing a statute, our goal is to give primary effect to the intent of the legislature. *Draper v. Mountain States Mut. Cas. Co.,* 116 N.M. 775, 777, 867 P.2d 1157, 1159 (1994). Legislative intent is evidenced primarily through the language of the statutes. *See Norman v. Lockheed Eng'g & Sci. Co.,* 112 N.M. 618, 621, 817 P.2d 1260, 1263 (Ct.App.1991). We will reject an interpretation of a statute that makes part of it surplusage, and we will interpret statutes to give effect to all parts of the statute as a harmonious whole. *Montoya v. Mentor Corp.,* 1996–NMCA–067, ¶ 19, 122 N.M. 2, 919 P.2d 410; *Sec. Escrow Corp. v. Taxation & Revenue Dep't,* 107 N.M. 540, 543, 760 P.2d 1306, 1309 (Ct.App.1988). We cannot read into a statute language that is not there. *Id.* at 543, 760 P.2d at 1309.

{14} Reading Section 52–5–12 of the Act in conformity with these principles, we conclude that any provision allowing the release of the employer from liability in exchange for future payments of compensation or medical benefits must be found within that particular subsection. *See Cabazos,* 118 N.M. at 201, 879 P.2d at 1220 (concluding, in reading the statute in its entirety, that existence of three different subsections concerning lump-sum payments indicates that three distinctly different situations are involved). The only release language in Section 52–5–12 appears in the second sentence of Subsection (B) that governs total lump-sum payments. We conclude that the legislature did not intend for the release language in Subsection (B) to apply to partial lump-sum payments under Subsection (C). *See Cabazos,* 118 N.M. at 202, 879 P.2d at 1221.

{15} Employer argues that Subsection (C) does allow this type of release and relies on the following language found in *Ramirez v. Johnny's Roofing, Inc.,* 1999–NMCA–038, ¶ 6, 127 N.M. 83, 977 P.2d 348 (emphasis added by Employer).

> Section 52–5–12(C) (1990) provides for the partial lump-sum settlement of workers' compensation claims. Such agreements allow workers at MMI to receive a portion of

the benefits to which they are entitled in exchange for *releasing* their employers from liability for making biweekly payments for *a period of time.*

We fail to see how this language advances Employer's argument. The statement pertains only to releases of an employer's liability for making biweekly payments *for a period of time.* Partial lump-sum payments are customarily treated as credits against benefits. *See West v. Home Care Res.,* 1999–NMCA–037, ¶ 13, 127 N.M. 78, 976 P.2d 1030 ("it is customary to apportion the credit for lump-sum payments by shortening the number of weeks that compensation is paid"); *see also Paternoster v. La Cuesta Cabinets, Inc.,* 101 N.M. 773, 779, 689 P.2d 289, 295 (Ct.App. 1984) (acknowledging availability of credit for employer's overpayment of benefits by shortening the number of weeks in which worker is paid periodic compensation).

{16} Employer also relies on *Ramirez* and the cases cited therein in support of his argument that the Further Benefits Provision is binding under general principles of contract law. *See Cruz v. Liberty Mut. Ins. Co.,* 119 N.M. 301, 889 P.2d 1223 (1995) (holding that the Workers' Compensation Administration has continuing jurisdiction over worker's claim against employer for bad faith failure to pay medical benefits pursuant to full lump-sum settlement agreement relating to 1986 injury); *Ratzlaff v. Seven Bar Flying Serv., Inc.,* 98 N.M. 159, 646 P.2d 586 (Ct. App.1982) (holding that worker's release of claims against employer for further obligations in exchange for full lump-sum settlement was binding); *Woods v. City of Hobbs,* 75 N.M. 588, 590, 408 P.2d 508, 510 (1965) (setting aside release obtained by employer's misrepresentation in exchange for full settlement); *Thomas v. Barber's Super Mkts., Inc.,* 74 N.M. 720, 722, 398 P.2d 51, 52 (1964) (holding that claimant's acceptance of partial payment of a disputed and unliquidated claim was sufficient consideration for full release of employer from claims to benefits, where release not procured by fraud or undue influence). These cases do not help Employer. None of the cases involves a release that, as here, exceeds the scope of release permitted under the Act. Employer's argument fails.

{17} In summary, we hold that Subsections (A) and (C) of Section 52–5–12 do not allow the release of an employer from liability for further benefit payments in exchange for partial lump-sum payments when Worker's condition becomes worse. Consequently, the Further Benefits Provision contained in the November 1996 Order is incompatible with the Act because it expands the scope of releases in connection with partial lump-sum payments beyond that allowed under Section 52–5–12. Accordingly, the Further Benefits Provision is invalid as a matter of law. *See Rumpf v. Rainbo Baking Co.,* 96 N.M. 1, 3–4, 626 P.2d 1303, 1305–06 (Ct.App.1981) (remanding to delete from judgment a dismissal with prejudice of worker's benefits claim on grounds that dismissal would deprive worker of legal right to reopen claim at a later date, even though worker's attorney approved the judgment, and stating that "[s]uch a disposition is incompatible with the statute").

## II. "Exhaustion" of Payments

{18} The 1995 Resolution provided for a maximum benefit period of 500 weeks for Worker, who is less than eighty percent disabled. *See* Section 52–1–42(A). While Worker was receiving his periodic PPD payments, he also requested and received eleven partial lump-sum payments for debt, pursuant to Section 52–5–12(C). The WCJ approved the last lump-sum payment on April 10, 1997. Worker's last PPD payment was made on or about September 22, 1997. Had Worker received no partial lump-sum payments for debt, his PPD benefits would have continued until approximately December 2003. The WCJ found and concluded that the partial lump-sum payments had "accelerated" the 500–week benefit period such that no further benefits would be due after Worker received disability payments covering the 500–week statutory period. The WCJ further concluded that prior to December 1998, Worker had "exhausted" all the benefits to which he was entitled as a result of the July 1994 injury; and, therefore, pursuant to Sections 52–1–42 and 52–5–12(A), Worker was not entitled to additional benefits. Employer agrees with the WCJ that once a worker has received the equivalent of 500 weeks of benefits, he has no right to additional benefits

based on change in condition. Worker argues that the timing of receipt of benefits is different than the period during which Worker is entitled to additional benefits from a change in condition.

{19} To the extent that the WCJ's determination involves a mixed question of law and fact, we accord deference to the factual findings regarding the amount of benefits worker received but review de novo the legal determination that Worker is precluded from seeking a modification of benefits. *See Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 627, 916 P.2d 822, 827 (1996) (stating that appellate court may draw its own conclusions of law on appeal). Section 52–1–56 of the Act allows an increase in the amount of compensation allowable based on a proper showing that Worker's disability has increased. Section 52–1–56 was enacted to meet the changes that may occur in a worker's physical condition. *Herrera*, 1999 NMCA–140, ¶ 7, 128 N.M. 300, 992 P.2d 313 (citing *Glover v. Sherman Power Tongs*, 94 N.M. 587, 590, 613 P.2d 729, 732 (Ct.App. 1980) (decided under substantially similar provision of prior law)). Section 52–1–42 of the Act provides a maximum duration of partial disability benefits of 500 weeks.

{20} We agree with Worker that under Sections 52–1–56 and 52–1–42 Worker is entitled to petition for modification at any time during the 500–week statutory benefits period, even if Worker has received all of the PPD benefits to which he was entitled through partial lump-sum payments before the 500–week period expired. The law is settled in New Mexico that a compensation order can be reopened during the remainder of the statutory period for the purpose of requesting an increase or decrease in benefits. In our recent decision in *Henington v. Technical–Vocational Inst.*, 2002–NMCA–025, 131 N.M. 655, 41 P.3d 923, we affirmed the principle first articulated in cases decided under predecessors to Section 52–1–56, that the purpose of Section 52–1–56 is to give the WCJ the power to modify compensation awards based upon a proper showing. *See Henington,* 2002–NMCA–025, ¶ 13, 131 N.M. 655, 41 P.3d 923 and cases cited therein.

{21} Clearly, if Worker had not elected to receive partial lump-sum payments, he would have continued to receive periodic PPD benefits until the end of 2003. During that time, pursuant to Section 52–1–56 and established precedent, Worker could seek a modification of benefits under Section 52–1–56. *See Di-Matteo v. County of Dona Ana*, 109 N.M. 374, 377, 785 P.2d 285, 288 (Ct.App.1989). We see no reason to depart from precedent simply because Worker received benefits in the form of partial lump-sum payments instead of periodic payments.

{22} Accordingly, we hold that a worker may, pursuant to Section 52–1–56, seek an increase in his compensation based on change in condition at any time during the statutory benefits period under Section 52–1–42 even if, as a result of receiving partial lump-sum payments for debt pursuant to Section 52–5–12(C), the worker has received the monetary equivalent of the benefits allowed in a compensation order before the benefits period expires.

### III. Worker's Entitlement to Additional TTD Benefits and Law of the Case Doctrine

{23} The WCJ found that Worker's December 1998 back injury was causally related to the July 1994 injury, and that Worker was temporarily totally disabled as a result of the injury from December 29, 1998, through August 9, 1999. Worker has met his burden with respect to change in condition. *See Amos v. Gilbert W. Corp.*, 103 N.M. 631, 635–36, 711 P.2d 908, 912–13 (Ct.App.1985) (stating subsequent change in worker's condition is factual matter to be established by movant). Employer does not challenge the WCJ's findings and they are therefore binding on Employer on appeal. *See West*, 1999–NMCA–037, ¶ 2, 127 N.M. 78, 976 P.2d 1030 (holding unchallenged facts are binding on appeal). In light of our reversal of the WCJ's determinations that Worker's claim to further benefits was either released or exhausted, the WCJ's uncontested finding that Worker was temporarily totally disabled for a thirty-two week period entitles Worker to TTD benefits for this period of time. *See* NMSA 1978, § 52–1–41 (1999).

{24} Worker also argues that the WCJ erred in concluding that the November 1996 Order is the law of the case and, therefore, bars Worker's claim to additional TTD benefits. Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes a binding precedent in successive stages of the same litigation. *In re Mission Petroleum Carriers, Inc. v. N.M. State Corp. Comm'n*, 113 N.M. 477, 479, 827 P.2d 1291, 1293 (1992). The WCJ applied the law of the case doctrine in the erroneous belief that the November 1996 Order was in accordance with the Act. Employer makes the same assumption on appeal. We have held above that the Further Benefits Provision violates Section 52–5–12(A) and (C). The law of the case doctrine does not require us to uphold a clearly incorrect decision. *See Kucel v. N.M. Med. Review Comm'n*, 2000–NMCA–026, ¶ 17, 128 N.M. 691, 997 P.2d 823; *State v. Breit*, 1996–NMSC–067, ¶ 12, 122 N.M. 655, 930 P.2d 792 (stating that court will not apply the doctrine where result would be manifestly unjust). Accordingly, the law of the case doctrine is inapplicable here.

## IV. Benefit Preclusion Under Section 52–5–9(B)

{25} In response to Worker's 1999 Complaint, Employer raised the Further Benefits Provision as a defense. The WCJ accepted Employer's conclusion of law that Worker's claim was barred because Worker did not seek review of the November 1996 Order within two years after it was entered, pursuant to Section 52–5–9(B). Worker challenges the WCJ's conclusion, arguing that the date of Worker's last benefit payment is the applicable date under Section 52–5–9(B), and, therefore, Worker timely challenged the November 1996 Order by filing his 1999 Complaint within two years of September 21, 1997, the date his last benefit payment was made. We agree with Worker that his claim for benefits was not time barred under Section 52–5–9(B).

{26} The interpretation of Section 52–5–9(B) is a question of law, which we review de novo. *See Ramirez v. IBP Prepared Foods*, 2001–NMCA–036, ¶ 10, 130 N.M. 559, 28 P.3d 1100 (stating that interpretation of a worker's compensation statute is a question of law to be reviewed de novo). When the wording of a statute is clear and unambiguous, we will give effect to the wording of the statute. *See Storey v. Univ. of N.M. Hosp./BCMC*, 105 N.M. 205, 207, 730 P.2d 1187, 1189 (1986) ("An unambiguous statute should be given effect according to its clear language.").

{27} Section 52–5–9(B) permits a party to seek modification of a compensation order if review is sought "within two years after the date of the last payment or the denial of benefits" upon grounds including "change in condition." *See also Fasso v. Sierra Healthcare Ctr.*, 119 N.M. 132, 133, 888 P.2d 1014, 1015 (Ct.App.1994) (applying two-year limitations period under Section 52–5–9(B) to consideration of worker's petition for increased medical benefits based on change in condition). A compensation order is modifiable under Section 52–5–9 even when premised on a lump-sum settlement agreement. *Fasso*, 119 N.M. at 134, 888 P.2d at 1016. Section 52–5–9(B) of the Act expressly provides that the operative dates for determining when the statute begins to run are the "date of the last payment or the denial of benefits."

{28} Employer argued that by filing the 1999 Complaint, Worker was in effect seeking review of the November 1996 Order for which the limitation period had run. Employer overlooks the fact that the November 1996 Order was not a denial of benefits because it expressly provided for an additional 70.85 weeks of PPD benefits. Five months later in April 1997, the WCJ approved another partial lump-sum payment order. Until Worker's condition worsened, he had no grounds for seeking additional benefits. While Employer would like to focus on the 1996 Order, the limitation period in the statute is triggered only by date of denial of benefits or last payment. The "denial of benefits" occurred in 1999, when Employer denied Worker's request for TTD payments. It was only after this denial, on August 23, 1999, that Worker filed his 1999 Complaint. The 1999 Complaint was filed within two years of the denial and therefore is not time barred.

{29} We also reject Employer's argument that Worker failed to preserve his challenge to the November 1996 Order at trial. Employer raised the order as a defense to the 1999 Complaint and the issue of whether Worker's claim is precluded by the language in the November 1996 Order is shown as contested in the Pretrial Order.

## V. The WCJ's Refusal to Allow Worker to Call Employer's Attorney as a Witness

{30} Worker also argues on appeal that the WCJ erred in sustaining the objection of Employer's attorney to being called as a witness at the trial to testify about the November 1996 Order. This issue is rendered moot by our determination that the Further Benefits Provision is invalid. *See Srader v. Verant*, 1998–NMSC–025, ¶ 40, 125 N.M. 521, 964 P.2d 82 (reviewing court generally does not decide academic or moot questions).

## CONCLUSION

{31} For the reasons set forth above, we reverse the WCJ's dismissal of Worker's claim for TTD benefits due to a change in condition. Employer does not challenge the WCJ's findings that Worker's back problems in December 1998 were causally related to his July 1994 work-related back injury. Therefore, we remand this matter to the WCJ (1) to determine the amount of TTD benefits to which Worker is entitled for the period from December 29, 1998, through August 9, 1999, taking into account the amount of PPD payments that Worker has already received for this time period; and, (2) in light of worker's recovery of benefits pursuant to this opinion, to award attorney fees, pursuant to NMSA 1978, § 52–1–54 (1993) including fees for work incident to this appeal.

{32} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and IRA ROBINSON, Judges.