**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-043**

**Filing Date:  March 16, 2009**

**Docket No. 28,060**

**DAVID KARPIEN,**

      **Petitioner-Appellant,**

**v.**

**DAWN KARPIEN,**

      **Respondent-Appellee.**


**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**John F. Davis, District Judge**

The Childress Law Office
Sidney Childress
Albuquerque, NM

for Appellant

The Family Law Firm by
 Felissa M. Garcia
Donna Trujillo Dodd
Albuquerque, NM

for Appellee

**OPINION**

**CASTILLO, Judge.**

**{1}**    Husband and Wife were in the process of divorce when Wife died.  The district court continued with proceedings related to the division of the marital property and entered a final decree.  Husband's appeal presents us with a question of first impression:  What is the effect of the death of one spouse on a pending divorce proceeding?  We conclude that NMSA 1978, Section 40-4-20 (1993) is controlling, that marital property and debt covered by Section 40-4-20 is divided and distributed according to New Mexico domestic relations law,

1

that debt incurred after the death of the decedent spouse is separate debt to be dealt with through probate, and that Husband is not considered a surviving spouse for purposes of probate. Accordingly, we reverse and remand.

## I.  BACKGROUND

{2}  Husband filed a petition for divorce in March 2005. Before the divorce was finalized, Wife, who was suffering from cancer, died overseas while on a trip with her mother. Wife's parents (Parents) paid medical expenses related to her last illness as well as funeral and repatriation expenses. As personal representatives of Wife's estate, Parents were substituted for Wife as the "Respondent," and the district court continued with proceedings to divide the marital property. A final decree was entered on June 13, 2007. The court allocated the community property of the couple, determined and divided the community debt, and ordered that the marital residence be sold in order to satisfy the debt of the community. That community debt included the balance owed on two mortgages on the home, credit card debt, certain medical bills, and repatriation and funeral expenses that were incurred after Wife's death and paid by Parents. Husband appeals the order of the district court.

## II.  DISCUSSION

{3}  Husband makes two general arguments on appeal. First, Husband contends that the district court erred in its division of the couple's community property because the statutes regarding intestate succession require that Husband, as Wife's surviving spouse, receive all of Wife's community property. Second, Husband argues that the district court improperly ordered the sale of the family home without permitting Husband to take a homestead exemption. Both issues require statutory construction; our standard of review is de novo. *See Bell v. Estate of Bell*, 2008-NMCA-045, ¶ 11, 143 N.M. 716, 181 P.3d 708.

### A.  Division of Community Property

### 1.  Basis for Distribution of Wife's Community Property

{4}  The starting point for Husband's argument is in the Uniform Probate Code (Probate Code), specifically NMSA 1978, Section 45-2-102(B) (1975), which directs that "as to community property, the one-half of the community property as to which the decedent could have exercised the power of testamentary disposition passes to the surviving spouse." According to Husband, as Wife's surviving spouse, he is entitled to receive all of her community property by intestacy. Husband recognizes that Section 40-4-20 permits the district court to resolve a pending division of marital property in a divorce proceeding in which one spouse dies before a final decree of divorce is entered, and Husband does not dispute that the district court had jurisdiction to divide the marital property. We have difficulty in understanding Husband's contention, but it appears he is arguing that Section 40-4-20 merely secures the district court's jurisdiction over the property division and that the district court should have distributed the marital estate under Section 45-2-102 of the Probate Code.

2

**{5}** Before we address Husband's first argument, we believe it is helpful to review the history and the language of Section 40-4-20(B), which states the following:

> Upon the filing and service of a petition for dissolution of marriage, separation, annulment, division of property or debts, spousal support, child support or determination of paternity pursuant to the provisions of Chapter 40, Article 4 or 11 NMSA 1978, *if a party to the action dies during the pendency of the action*, but prior to the entry of a decree granting dissolution of marriage, separation, annulment or determination of paternity, *the proceedings for the determination, division and distribution of marital property rights and debts*, distribution of spousal or child support or determination of paternity *shall not abate. The court shall conclude the proceedings as if both parties had survived.* The court may allow the spouse or any children of the marriage support as if the decedent had survived, pursuant to the provisions of Chapter 40, Article 4 or 11 NMSA 1978. In determining the support, the court shall, in addition to the factors listed in Chapter 40, Article 4 NMSA 1978, consider the amount and nature of the property passing from the decendent [decedent] to the person for whom the support would be paid, whether by will or otherwise.

(Emphasis added.) In essence, the statute permits a district court, upon the death of one of the divorcing parties and prior to entry of a final decree, to continue the division of marital property as if both parties had survived—a statutory change to the common law.

**{6}** The majority of jurisdictions do not take such an approach and continue to adhere to the common law rule of abatement: "When a party to a dissolution action dies before the entry of a decree, the marriage terminates as a matter of law. The court divests of jurisdiction over the matter, including any property rights, as they are incidental to a final decree of dissolution." Anthony Bologna, Comment, *The Impact of the Death of a Party to a Dissolution Proceeding on a Court's Jurisdiction Over Property Rights*, 16 J. Am. Acad. Matrimonial Law. 507, 507 (2000) (footnotes omitted); *see also Rhodes v. Pederson*, 229 S.W.3d 62, 65-66 (Ky. Ct. App. 2007) ("[O]nly after a decree in divorce is granted . . . can the court continue to litigate the attending issues, including the equitable distribution of property."); *LeTarte v. Malotke*, 188 N.W.2d 673, 676 (Mich. Ct. App. 1971) ("The clear rule in Michigan and the majority of states is that where one of the parties to a [d]ivorce action has died after the trial has concluded but before judgment, the action abates because there is no longer any marriage to dissolve."). Bolgona, in fact, incorrectly categorized the law of New Mexico and asserted that our courts are bound to apply the common law rule. *See* Bologna, *supra*, at 517 (citing *State ex rel. Rivera v. Conway*, 106 N.M. 260, 261, 741 P.2d 1381, 1382 (1987) (applying the common law rule and directing dismissal of a divorce proceeding after the death of one spouse based on lack of jurisdiction)). The 2000 article, however, generally relied on case law and failed to consider the New Mexico statutory scheme.

**{7}** As best we can determine, only two other state legislatures have provisions in their domestic relations codes that allow distribution of marital property after the death of a

3

divorcing spouse. *See* N.C. Gen. Stat. § 50-20(c)(l)(1) (2005) ("A claim for equitable distribution, whether an action is filed or not, survives the death of a spouse so long as the parties are living separate and apart at the time of death."); 23 Pa. Cons. Stat. Ann. § 3323(d.1) (2004) ("In the event one party dies during the course of divorce proceedings, no decree of divorce has been entered and grounds have been established as provided in subsection (g), the parties' economic rights and obligations arising under the marriage shall be determined under this part rather than under 20 Pa.C.S. (relating to decedents, estates and fiduciaries)."). The New Mexico Legislature has made a clear break from the majority of jurisdictions by enacting Section 40-4-20(B).

**{8}** With this as background, we now consider Husband's interpretation of Section 40-4-20(B). "The principal objectives in the judicial construction of statutes are to determine and give effect to the intent of the [L]egislature." *City of Rio Rancho v. Logan*, 2008-NMCA-011, ¶ 7, 143 N.M. 281, 175 P.3d 949 (internal quotation marks and citation omitted). Husband argues that the Legislature intended for the provisions of the Probate Code, including Section 45-2-102, to prevail in any conflict with another statute—specifically Section 40-4-20. Husband provides no support for his assertion, other than a general citation to NMSA 1978, Section 45-1-105 (1975), which states that the Probate Code should be construed such that "no part of it shall be deemed impliedly repealed, amended or expanded by subsequent legislation." Further, Husband does not explain how the statutes conflict, nor does he explain how Section 40-4-20(B) impliedly repeals, amends, or expands the Probate Code. Accordingly we conclude that this contention has no merit.

**{9}** "Legislative intent is evidenced primarily through the language of the statutes." *Souter v. Ancae Heating & Air Conditioning*, 2002-NMCA-078, ¶ 13, 132 N.M. 608, 52 P.3d 980. "When construing a statute, we begin with the plain language, and we assume that the ordinary meaning of the words expresses the legislative purpose." *N.M. Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-010, ¶ 12, 141 N.M. 41, 150 P.3d 991. The plain language of Section 40-4-20(B) directs that when one party to a divorce proceeding dies during the pendency of the action, "proceedings for the determination, division and distribution of marital property rights and debts" shall not abate and shall be concluded "as if both parties had survived." Husband's approach would require the district court to read into Section 40-4-20(B) a requirement that any division of property be based on Wife's status as a decedent under the Probate Code. "We cannot read into a statute language that is not there." *Souter*, 2002-NMCA-078, ¶ 13.

**{10}** In addition, an integral part of Husband's argument is that he should be treated as a "surviving spouse" for purposes of the distribution of Wife's estate. NMSA 1978, Section 45-2-802(B)(3) (1995) of the Probate Code, however, specifically excludes from the definition of "surviving spouse" an individual "who was a party to a valid proceeding concluded by an order purporting to terminate all marital property rights, including a property division judgment entered pursuant to the provisions of Section 40-4-20[]." There is no dispute that Husband was a party to the final decree entered pursuant to Section 40-4-20, and this is the type of proceeding described in Section 45-2-802(B)(3). Husband is therefore precluded from being considered a "surviving spouse" for purposes of inheritance or allowances under probate law.

**{11}** If we were to adopt Husband's reasoning and conclude that Section 40-4-20(B) is only a jurisdictional device, the terms of this statute would be rendered meaningless. Husband would receive all of Wife's property subject only to creditor's claims. As a result, the divorce proceeding would effectively abate because all of Wife's estate would be divided according to probate law—but without the need for probate. We will not, as Husband would have us do, interpret the relevant statutes to effectively repeal the provisions of Section 40-4-20(B). *See* NMSA 1978, § 12-2A-18(A)(2), (3) (1997) ("A statute or rule is construed, if possible, to . . . give effect to its entire text[] and . . . avoid an unconstitutional, absurd or unachievable result.").

## 2.     Personal Representative of Wife's Estate

**{12}** Husband also argues that the division of marital property was improper because due to Wife's death, there was no appropriate "Respondent" to receive her share of the community property. The district court awarded Wife's share of the community property to the personal representatives of Wife's estate, Parents. The Probate Code explains that "[e]xcept as to proceedings which do not survive the death of the decedent, a personal representative of a decedent . . . has the same standing to sue and be sued in the courts of New Mexico . . . as his decedent had immediately prior to death." NMSA 1978, § 45-3-703(E) (1975). As we have explained, Section 40-4-20(B) makes clear that proceedings for the distribution of marital property survive the death of a spouse. Parents therefore had the "same standing" to be sued as did Wife during her life. Section 45-3-703(E). The personal representatives of Wife's estate succeeded to her interest. The district court had jurisdiction to divide the marital estate between Husband and the personal representatives of Wife's estate.

## 3.     Sale of Family Residence

**{13}** Next, Husband contends that the district court improperly awarded community property to creditors. Husband's basis for this argument is not entirely clear: it could be either Parents' status both as personal representatives of the estate and creditors of the community debt or the district court's order to sell the marital residence in order to satisfy community creditors. The first basis fails because the district court awarded Wife's share of the community property not to Parents, but to the personal representatives of Wife's estate. As personal representatives, Parents are "under a duty to settle and distribute the estate of a decedent in accordance with the terms of . . . the [Uniform] Probate Code." Section 45-3-703(A) (alteration in original). Wife's property was not awarded to Parents as creditors but as personal representatives of her estate.

**{14}** The alternative basis for Husband's challenge to the sale of the marital residence is that the property should not be sold to satisfy community creditors and that Parents are community creditors. Parents, citing NMSA 1978, Section 45-2-805 (1984) of the Probate Code, argue that the order to sell the marital home is equitable because Husband "is not only liable for his share of the community debt, but also inherits liability for his spouse's share." We have already discussed Husband's similar argument, based upon Section 45-2-802, that he should have received all of Wife's community property. We rejected Husband's

5

argument, and we similarly reject Parents' argument.

{15}    Section 45-2-805 deals with the distribution of a deceased spouse's one-half share of community property as well as with the payment of community debts. In applicable part, Section 45-2-805(B) directs that the deceased spouse's "separate debts and funeral expenses and the charge and expenses of administration are to be satisfied first from his separate property." The statute goes on to address the situation in which the decedent's separate property is insufficient to pay the enumerated expenses, in which case the statute imposes liability on "the deceased spouse's undivided one-half interest in the community property." *Id.*

{16}    Parents appear to want it both ways. They argue that Wife's share of the community property should be distributed to her estate under domestic relations law, yet they simultaneously contend that Husband's share of his community property should also be liable for all debt. This would have the effect of treating Husband as a surviving spouse for the purpose of payment of debt but not for the purposes of inheritance or allowances. Such an approach leads to denying Husband the benefits of the status of surviving spouse, while at the same time assigning to him all of the liabilities of a surviving spouse. In addition, Parents' argument ignores existing statutes, which provide for the division of community debt under the current circumstances.

{17}    As we have stated before, Section 40-4-20(B) explains that should a divorcing party die prior to the entry of a decree of divorce, the court "shall conclude the proceedings as if both parties had survived." The statute specifically includes proceedings for the "division and distribution of marital property rights and debts." *Id.* As such, we conclude that in the event of the death of a divorcing party, it is appropriate for the district court to apply the statutes for domestic relations in order to divide and satisfy community debt. NMSA 1978, Section 40-3-11 (1995) controls the priorities for the satisfaction of community debt. Section 40-3-11(A) indicates that community debts "shall be satisfied first from all community property and all property in which each spouse owns an undivided equal interest as a joint tenant or tenant in common, excluding the residence of the spouses." If community assets are insufficient, the residence may be used to satisfy the community debt. *Id.* Section 40-3-11(D), however, restricts the application of the entire section to cases in which "both spouses are living," and instructs that the statute "shall not apply to the satisfaction of debts after the death of one or both spouses."

{18}    Although Section 40-3-11(D) could be read to nullify the court's power under Section 40-4-20 to determine, divide, and distribute community debt in the event of the death of one of the spouses, Section 40-3-11(D) and Section 40-4-20 can be harmonized. *See Phelps Dodge Tyrone, Inc. v. N.M. Water Quality Control Comm'n*, 2006-NMCA-115, ¶ 15, 140 N.M. 464, 143 P.3d 502 ("We attempt to harmonize statutes in a way that facilitates their operation and the achievement of their goals." (internal quotation marks and citation omitted)). We have an obligation to read and construe "statutes [that] appear to conflict, . . . if possible, to give effect to each." NMSA 1978, § 12-2A-10(A) (1997). In order to give effect to both statutes, we read Section 40-4-20 to instruct the district court to divide community debt incurred before the death of one spouse according to the domestic relations

6

principles found in Section 40-3-11. Turning to the limiting provision of Section 40-3-11(D), we conclude that this section prohibits the district court from applying the priority and division rules of community debt to a debt that is incurred *after* the death of a spouse. If the laws governing community debt do not apply to divide debt that accumulates after the death of a spouse, it follows that such debt is not to be treated as community debt. *See* NMSA 1978, § 40-3-9(B) (1983) (defining community debt as "debt contracted or incurred by either or both spouses during marriage which is not a separate debt").

{19}     It appears from the record that the district court's allocation of community debt and property—without reference to Section 40-3-11 and without consideration of whether the debt was incurred before and after death—effectuates the sale of the home in order to satisfy creditors who are properly creditors of Wife's estate and not the community. Although Husband does not challenge the district court's categorization of the repatriation and funeral expenses as community debt on appeal, we note that Husband did raise the matter before the district court in the motion for reconsideration. Further, we are mindful that "[t]he threshold question of whether an item is community or separate debt is a legal issue." *Bursum v. Bursum*, 2004-NMCA-133, ¶ 19, 136 N.M. 584, 102 P.3d 651. We conclude that because there is no factual dispute that the repatriation and funeral expenses were incurred after Wife's death, those debts cannot be considered as community debt under Section 40-3-11(D) and should therefore be considered Wife's separate debt.

{20}     Accordingly, we remand the matter to the district court to recalculate the community debt absent the repatriation and funeral expenses that were incurred after Wife's death and to further assess the need to sell the marital residence in order to satisfy the remaining community debt. The district court may also reallocate the community property, if necessary.

**D.     Homestead Exemption**

{21}     In addition, Husband argues that the district court was required to apply the homestead exemption before the house was sold. *See* NMSA 1978, § 42-10-9 (2007). Again, it is difficult to understand exactly what Husband is arguing, especially because it appears from the record that Husband has not claimed the homestead exemption. *See* NMSA 1978, § 39-4-15 (1933) ("The defendant, if he desires to claim such real estate or any part thereof as an exemption allowed by law, shall set up his claim of exemption by answer in such foreclosure suit."); *see also Grygorwicz v. Trujillo*, 2008-NMCA-040, ¶ 6, 143 N.M. 704, 181 P.3d 696 (explaining that any claim of exemption allowed by law must be set up in an answer to a foreclosure suit and that "a defendant waives any claim of exemption by not so raising it"), *rev'd on other grounds*, ___-NMSC-___, ___ N.M. ___, ___ P.3d ___ (No. 30,939, Feb. 24, 2009). Therefore, we do not address the exemption.

**III.    CONCLUSION**

{22}     We reverse and remand for entry of a final decree in conformity with this opinion.

{23}     **IT IS SO ORDERED.**

7

_____
**CELIA FOY CASTILLO, Judge**


**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**MICHAEL D. BUSTAMANTE, Judge**

Topic Index for *Karpien v. Karpien*, No. 28,060

| | |
|---|---|
| **DR** | **DOMESTIC RELATIONS** |
| DR-DM | Dissolution of Marriage |
| DR-DP | Division of Property |
| DR-CU | Community Debts |
| | |
| **PR** | **PROPERTY** |
| PR-HE | Homestead Exemption |
| | |
| **ST** | **STATUTES** |
| ST-RC | Rules of Construction |
| ST-IP | Interpretation |
| | |
| **WL** | **WILLS, TRUSTS AND PROBATE** |
| WL-AE | Administration of Estate |
| WL-CE | Claims Against Estate |
| WL-NK | Next of Kin |