2004-NMCA-082

94 P.3d 837

**Billy D. JACKSON, by Sally R. Jackson, his personal representative, Worker–Appellant,**

v.

**K & M CONSTRUCTION and New Mexico Mutual Casualty Company, Employer/Insurer–Appellees.**

No. 24,174.

Court of Appeals of New Mexico.

May 21, 2004.

Certiorari Denied, No. 28,734, July 6, 2004.

Robert J. Maguire, Lucia Misa–O'Connor, Robert J. Maguire & Associates, P.C., Albuquerque, NM, for Appellant.

Timothy R. Briggs, Miller Stratvert P.A., Albuquerque, NM, for Appellees.

## OPINION

SUTIN, Judge.

{1} Worker's widow and personal representative, Appellant Sally Jackson, appeals from a Workers' Compensation Administration denial of benefits. This appeal requires this Court to determine if an insurer is liable for payment of a lump sum payment under NMSA 1978, § 52–5–12(C) (2003) when the worker dies more than two years after a work-related injury. We are also asked to review an agreement which provided Worker with a one-time payment for medical care relating to housing under NMSA 1978, § 52–1–49 (1990). We hold that NMSA 1978, § 52–1–47(C) (1990) proscribes the payment of compensation benefits after the death of an injured worker and this proscription includes any lump sum payments. We also hold that under the facts of this case, Section 52–1–49 does not require Worker's increased mortgage debt to be paid as medical care. Accordingly, we affirm.

## BACKGROUND

{2} Up to the death of Billy Jackson (Worker), the workers' compensation insurer, New Mexico Mutual Casualty Company (Insurer) paid Worker full disability benefits and paid his hospitalization and medical expenses following Worker's November 1999 on-the-job injury that rendered him a quadriplegic. After his hospitalization, and based on his and Mrs. Jackson's insistence, Worker returned home. However, before he returned home, it was clear to all that their thirty-year-old mobile home would require modifications to accommodate Worker and his wheel chair. Insurer received from a contractor a verbal estimated cost of $25,000 to

$30,000 to accomplish the remodeling necessary. The Jacksons approached Insurer about the possibility of obtaining a sum of money, in lieu of remodeling costs, to allow them to buy a new home. Insurer's response to this request was:

- We are willing to do one of the following:
  - We will pay for one (1) room and a bathroom to be added to your existing trailer. This room and bathroom will be handicap accessible. We will not make any other changes to your home[.]

### Or

  - We will pay *you* the sum of $20,000, to be used as a down payment on a new trailer. In return for the $20,000 you will release us from all housing expenses (with the one exception of one ramp). You will be required to make this new home handicap accessible. Any and all changes to the home will be your responsibility (with the one exception of one ramp). Any future expenses for the home will be your responsibility alone.
- Regardless of which of the two above options you choose, we will provide one (1) ramp. The ramp will be placed at the door of your choice.

At the same time, Insurer stated it was "willing to make a van handicap accessible if you buy the van yourself," meaning that "the van will be capable of transporting you," not adaptation of the van "so that you can drive it, yourself, in your present condition."

{3} Mrs. Jackson, under a general power of attorney signed by Worker (signing with an "X") before a notary public, signed an agreement pursuant to which the Jacksons chose the $20,000 alternative. Among other provisions, the agreement stated:

This is an agreement between Billy Jackson [ ], Sally Jackson, and Southwest Casualty Company, relating to money advanced to Mr. Jackson for the purchase of, and modifications to, a new mobile home.

It is agreed that:

. . . .

2) All modifications to the home, including, but not limited to, modifications to make it handicap accessible, will be the sole responsibility of Mr. and Ms. Jackson, with the single exception of one ramp, to be provided by Southwest Casualty Company.

. . . .

7) The money advanced is for the purpose of a down payment on a new mobile home and modifications, and shall be used for that purpose only. . . .

. . . .

9) In exchange for the exact sum of Twenty Thousand Dollars advanced, to Mr. Jackson, for the purchase of a new mobile home and modifications, it is agreed that no further money will be paid by Southwest Casualty Company on Mr. Jackson's Workers' Compensation claim against K–M Construction, Inc., relating to **housing** (this includes all modifications required to make the home handicap accessible, this does not include one ramp for the home, which shall be provided by Southwest Casualty Company). Hospital stays and nursing home accommodations are not effected by this agreement. This agreement also does not effect [sic] any area of Workers' Compensation benefits that Mr. Jackson may be entitled to not related to housing, including but not limited to medical and indemnity benefits.

In the agreement, the Jacksons agreed that they "enter[ed] into this contract on a free and voluntary basis," and were "free to consult an attorney prior to entering into this contract." They also stated "that we are of sound mind and body and not under any direst [sic-duress] to enter into this contract." Still, on appeal, Appellant points out that she and Worker were not represented by counsel, and that the agreement was not approved by the Workers' Compensation Administration.

{4} The Jacksons used $19,000 of the $20,000 as a down payment on a new mobile home. Insurer paid $8,000 for a wheelchair ramp allowing Worker access to the new home. Worker, using trade-ins, purchased a

1999 Chevy van to accommodate his wheelchair and other needs. Insurer paid for modifications made to this vehicle. Unfortunately, after several months in his new home, Worker returned to a healthcare facility where he remained until his death on August 21, 2002.

{5} Prior to his death, in May 2001, Worker filed a Workers' Compensation complaint for various benefits. In May 2002, Worker sought a partial lump sum payment for debts totaling $105,476.89. Worker alleged the following debts: $38,920.66, a mortgage debt owed on the Jacksons' old home, and $122,754.32, the mortgage on the new home, "leaving a net increase in debt of $83,833.66"; $15,029.95, the outstanding loan on the 1999 Chevy; $6,613.28, representing credit card debt and Worker's proportionate share of attorney fees and gross receipts tax. After discovery occurred on the petition for a partial lump sum payment for debts, and after scheduled hearings were vacated, a final hearing on the lump sum issue was set for August 30, 2002. However, Worker died on August 21, 2002. The issues were finally heard and decided in May and June 2003. Although the Workers' Compensation Judge (WCJ) went through the normal benefit entitlement analysis, Appellant raises no issue on appeal with respect to any benefits sought in Worker's original claim.

{6} In regard to the partial lump sum payment for debt issues, the WCJ made the following findings, among others:

28. The principal portion of [Worker's] increased indebtedness is the result of a purchase of a new mobile home.

29. The purchase of the new mobile home was not medically necessary, as an addition to the old home would have accommodated Worker's medical needs.

30. The Insurer offered to provide the addition to Worker's old home....

31. In lieu of the addition, Worker and Mrs. Jackson elected to accept the sum of $20,000.00....

32. The agreement of May 19, 2000, is enforceable and valid as it constitutes a reasonable compromise of the form of reasonable and necessary medical

care, as relates to home health care facility needs.

33. The agreement of May 19, 2000, did not attempt to globally limit or compromise all medical care, only one aspect of what constituted reasonable and necessary medical care.

34. The Petition for Lump Sum was filed before Worker's death.

35. All weekly benefits due Worker, or Worker's spouse were paid in full as of Worker's death.

36. Awarding the requested lump sum for indebtedness would result in a very large overpayment of weekly benefits.

37. The case of *Holliday v. The Talk of the Town, Inc.,* 102 N.M. 540, 697 P.2d 959, provides only for recovery of benefits due before death.

38. Section 52–1–47(C) unequivocally ends benefits for Worker at his death.

39. The total amount of post-injury debts for Worker is $108,673.00 ($147,593.00 minus $38,920).

The WCJ then entered the following pertinent conclusions of law:

8. Employer and Insurer should not pay for Worker's new mobile home because it was not necessary or reasonable medical care.

. . . .

10. Worker received all benefits due him, prior to his death on August 21, 2002.

11. A lump sum is not appropriate as all benefits due the Worker and his dependents have been paid in full, as a result of Worker's death and Section 52–1–47(C) NMSA.

Based on these findings of fact and conclusions of law, the WCJ dismissed Worker's complaint with prejudice.

{7} On appeal, Appellant asserts she is entitled to a lump sum award in the amount of $105,476.89 for debts. As stated earlier in this opinion, Plaintiff arrives at $105,476.89 by totaling the following: $83,833.66 (net increase in home mortgage debt); $15,029.95 (vehicle loan); and $6,613.28 (credit card and attorney fees). Appellant also asserts she is entitled to have the $20,000 May 19, 2000

agreement declared invalid, entitling her to the $83,833.66 under Section 52–1–49. Appellant does not attack any finding of fact as unsupported by the evidence. In fact, Appellant states that the issues do not require this Court to examine the substantial facts but rather to interpret the law and the intent of the Legislature.

## DISCUSSION

### Standard of Review

■■■ {8} The WCJ's findings of fact are binding because they are not challenged on appeal. *West v. Home Care Res.*, 1999–NMCA–037, ¶ 2, 127 N.M. 78, 976 P.2d 1030. We review a WCJ's interpretation of the workers' compensation statutes de novo. *Herrera v. Quality Imports*, 1999–NMCA–140, ¶ 4, 128 N.M. 300, 992 P.2d 313.

### The Lump Sum for Debt Issue

■ {9} Section 52–5–12(C) permits a worker to obtain a partial lump sum payment for debts. Section 52–5–12(C) reads:

> After maximum medical improvement and with the approval of the workers' compensation judge, a worker may elect to receive a partial lump-sum payment of workers' compensation benefits for the sole purpose of paying debts that may have accumulated during the course of the injured or disabled worker's disability.

Section 52–1–47(C) limits compensation benefits as follows: "in no case shall compensation benefits for disability continue after the disability ends or after the death of the injured worker." [1]

{10} Appellant asserts that Section 52–1–47(C) should not be read to prohibit the lump sum benefit, relying primarily on the case of *Holliday v. Talk of the Town, Inc.*, in which this Court determined that a claim alleging that a worker was not receiving an appropriate amount of benefits before his death survived his death and was not barred under Section 52–1–47(C). 102 N.M. 540, 541–42, 697 P.2d 959, 960–61 (Ct.App.1985). Appellant also argues that the purpose of Section 52–5–12(C) is to further a public

policy acknowledging the economic difficulties faced by workers who cannot pay debts because of injury or disability, and to avoid workers becoming public charges. *See Souter v. Ancae Heating & Air Conditioning*, 2002–NMCA–078, ¶ 12, 132 N.M. 608, 52 P.3d 980 (stating the Legislature's intent in allowing lump sum payments is to balance the "competing interests between the policy of discouraging lump-sum payments and the economic difficulties faced by workers who cannot pay debts because of injury or disability"); *Arther v. Western Co. of N. America*, 88 N.M. 157, 159, 538 P.2d 799, 801 (Ct. App.1975) (stating lump sum payments were based on "the public policy of this state that . . . compensation shall be made in a certain amount, to secure the injured employee against want, and to avoid his becoming a public charge" (alteration in original) (internal quotation marks and citation omitted)). Appellant contends that the Legislature did not intend lump sum payments to be abated at death when the debt was incurred prior to the worker's death and a petition for a lump sum payment for the debt was pending at the time of the worker's death.

{11} In the Notice of Proposed Decision in the present case, the WCJ read *Holliday* to "stand[ ] for the proposition that a claim for benefits which arose prior to Worker's death would not be abated," but "not [to] stand for the proposition that Worker's death can be disregarded." The WCJ rejected Appellant's arguments because, "were [they] to be accepted, Employer would be responsible for a significant overpayment of benefits above those provided for under Section 52–1–47(C)."

{12} Insurer uses *Holliday* to support its position, pointing out that *Holliday* involved benefits that should have been paid before the worker died, not unaccrued benefits such as in the present case. Insurer asserts that *Holliday* affirmed the Section 52–1–47(C) mandate that unaccrued benefits for disability terminate upon death, by stating that "[t]his case does not involve awarded but unaccrued compensation benefits." *Holli-*

---

1. Worker died more than two years after his work-related injury. This presumably explains why compensation benefits were not paid to

Worker's widow as death benefits under NMSA 1978, § 52–1–46(C) (1999).

*day,* 102 N.M. at 541, 697 P.2d at 960. Citing *West,* 1999–NMCA–037, ¶ 13, 127 N.M. 78, 976 P.2d 1030, in which this Court recognized "that it is customary to apportion the credit for lump-sum payments by . . . applying the credit at the back-end of the weekly compensation award," Insurer argues that to award a lump sum would result in a significant overpayment of benefits entitling Insurer to a credit or reimbursement payable by Appellant and that such a result would be ludicrous.

{13} In addition, Insurer argues that a lump sum award can only be made if approved by the WCJ, that no lump sum award was approved before Worker's death, and, therefore, such an award cannot now be made. Further, Insurer argues that Appellant failed to show by substantial evidence that the WCJ would have awarded a partial lump sum. *See Cabazos v. Calloway Constr.,* 118 N.M. 198, 202, 879 P.2d 1217, 1221 (Ct. App.1994) (stating that the WCJ must scrutinize a request under Section 52–5–12(C) based on the facts of each individual case and that any lump sum awarded must be fair and equitable among the parties). In that regard, Insurer argues that Appellant also failed to prove Worker had debts that had gone unpaid but, rather, the evidence showed that Worker's debt obligations were kept current during the course of his disability. *See Carrasco v. Phelps Dodge/Chino Mines,* 119 N.M. 347, 349, 890 P.2d 408, 410 (Ct.App. 1995) ("In light of Section 52–5–12(A) one must conclude that Section 52–5–12(C) is not intended to permit lump-sum payments of those debts that the worker is able to keep current during disability with the help of *periodic* disability benefit payments.").

{14} Lastly, Insurer argues that it would not be fair and equitable to require it to pay a lump sum benefit because that would contravene the statutory provisions, and create an additional right when none exists under the Act, since it "would necessarily require an award of benefits following Worker's death, money to which the Worker is not entitled." *See West,* 1999-NMCA–037, ¶ 9, 127 N.M. 78, 976 P.2d 1030 (stating that this Court recognized in *Paternoster v. La Cuesta Cabinets, Inc.,* 101 N.M. 773, 776–77, 689

P.2d 289, 292–93 (Ct.App.1984), that providing for a credit for overpayment of benefits made by mistake and in good faith "was required as a matter of fundamental fairness"). According to Insurer, to make such an award would not only contravene Section 52–1–47(C), it would constitute an interpretation favoring worker over employer in violation of NMSA 1978, § 52–5–1 (1990).

{15} We think it is clear under a plain reading of Section 52–1–47(C) that, unless the exceptions stated in the statute apply, unaccrued compensation benefits to which a worker would be entitled, when alive, cease upon the death of the worker. *See Holliday,* 102 N.M. at 541, 697 P.2d at 960. Although Section 52–1–47(C) does not expressly or automatically resolve whether a pending petition for a lump sum award for existing debts necessarily should be denied because the worker dies, we construe the statute to require such a result.

{16} In enacting Section 52–1–47(C) and cutting off a worker's benefits at death unless the stated exceptions apply, the Legislature presumably intended this section to preclude the deceased worker's estate from obtaining benefits that would only accrue if the worker had lived. We think it is reasonable to believe that the Legislature intended such unaccrued workers' compensation benefits to be unavailable for any purpose including accumulated debts. If this was the Legislature's intent, and we think it was, there would seem to be little reason to think the Legislature intended the estate to have any greater right simply because the worker had a petition for a lump sum award on file before he or she died. In both instances, there exists a definite detriment to the deceased worker's estate where the estate is left with debts incurred and unpaid as a result of the injury and disability. We doubt the Legislature intended to permit the estate to receive a posthumous award in the latter case, but not in the former case.

{17} Section 52–1–47(C) was enacted in 1959. *See* 1959 N.M. Laws ch. 67, § 26. Section 52–5–12(C) was enacted in 1986. *See* 1986 N.M. Laws ch. 22, § 38. Section 52–5–12(C) enacted into law what had been treated in case law as an exception to the periodic

payment provision of the workers' compensation law. *See Arther*, 88 N.M. at 159–60, 538 P.2d at 801–02. However, in enacting Section 52–5–12(C), we glean no intent on the part of the Legislature to call upon unaccrued disability benefits for the lump sum payment of debt when (1) the worker is no longer disabled, due to his or her death, and, as a result, (2) there no longer exist any periodic payments due from which a lump sum payment for debt would be deducted.

{18} We hold that Appellant's claim for a lump sum award is not viable. Section 52–1–47(C) controls the result. We construe this statute to express a legislative intent to excuse an insurer from the obligation to pay benefits to a deceased worker's estate when as a matter of law there exist no benefits payable to the worker. Worker's petition while he was alive was for a partial lump sum payment ultimately to be credited against his future periodic disability payments. However, once Worker died, Appellant's claim was for a lump sum payment that could not be credited against unaccrued benefits that, as a matter of law, were no longer available.

{19} Section 52–5–1 of the Workers' Compensation Administration Act states:

It is the intent of the legislature in creating the workers' compensation administration that the laws administered by it to provide a workers' benefit system be interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers who are subject to the provisions of the Workers' Compensation Act [Chapter 52, Article 1 NMSA 1978] and the New Mexico Occupational Disease Disablement Law [52–3–1 NMSA 1978]. It is the specific intent of the legislature that benefit claims cases be decided on their merits and that the common law rule of "liberal construction" based on the supposed "remedial" basis of workers' benefits legislation shall not apply in these cases. The workers' benefit system in New Mexico is based on a mutual renunciation of common law rights and defenses by employers and employees alike. Accordingly, the legislature declares that the Workers' Compensation Act and the New Mexico Occupational Disease Disablement Law are not remedial in any sense and are not to be given a broad liberal construction in favor of the claimant or employee on the one hand, nor are the rights and interests of the employer to be favored over those of the employee on the other hand.

Our decision comports with the legislative intent expressed in Section 52–5–1. Nevertheless, we are not without sympathy for the position that the workers' compensation law ought to provide protection for a worker's spouse and children when the worker dies with debt created as a result of his injury and disability. Nor are we unmindful of this Court's and our Supreme Court's interpretative powers over the years with respect to workers' compensation laws. *See, e.g., Chavez v. S.E.D. Labs.*, 2000–NMCA–034, ¶ 45, 128 N.M. 768, 999 P.2d 412 (Sutin, J., dissenting in part), *aff'd in part, vacated in part*, 2000–NMSC–034, 129 N.M. 794, 14 P.3d 532. Nevertheless, we feel compelled by the plain language of Section 52–1–47(C) to leave it to the Legislature to require an employer or insurer to provide funds to a worker's surviving spouse or children for debt incurred by the worker before death.

### The Validity of the May 19, 2000 Agreement

■ {20} The agreement under which Insurer paid Worker $20,000 and exacted an agreement regarding future benefits was an agreement with respect to Insurer's obligation under Section 52–1–49. Appellant asserts that the May 19, 2000 agreement was also a lump sum agreement that had to be approved by a WCJ under NMSA 1978, §§ 52–5–13 (1989) and –14 (1990), and because it was not approved, it is invalid. Appellant asserts that Insurer cannot enforce the agreement to limit the amount it owed to $20,000. She claims $83,833.66 as the balance due for reasonably necessary housing related to Worker's treatment which amount, she asserts, is the difference between the Jacksons' mortgage on their original or existing home and the mortgage on their new home.

{21} In the Notice of Proposed Decision, the WCJ determined that "such agreements to compromise specific elements of medical care do not require the approval of the Workers' Compensation Administration." The WCJ stated that "[t]he parties may agree on those terms, so long as all entitlement to medical care is not being compromised or closed for a sum certain." The WCJ went on to determine that, under the circumstances of Worker's and his spouse's choice to accept a sum certain for a new home as opposed to amounts for modifications of their existing home, Insurer should not be responsible for Worker's "significantly increased expenses." The WCJ reasoned that Worker's and his spouse's decision "could be seen as unreasonable," given that "the costs of [the] new home were not reasonable and were not necessary," and "[m]odifications to the prior home would have been substantially more cost effective." The WCJ's pertinent findings of fact are numbers 28–33, and pertinent conclusion of law is number 8, set out earlier in this opinion.

{22} We reject Appellant's contention that she is entitled under Section 52–1–49 to the payment of the net increase of the mortgage debt. Appellant cites no authority to support her position. Also, she fails to specifically attack the WCJ's findings of fact, *see* Rule 12–213(A)(4) NMRA 2004, and is bound by those findings. *West*, 1999–NMCA–037, ¶ 2, 127 N.M. 78, 976 P.2d 1030. Appellant argues in her reply brief that findings numbered 29, 32, and 33 are conclusions of law, but fails to explain why they are conclusions of law and not findings of fact. In addition, assuming arguendo that they are conclusions of law, she fails to show they are unsupported by findings of fact or are otherwise erroneous. Finally, no reasonable construction of Section 52–1–49 can support the position that the increased mortgage debt is required to be paid as medical care. For these reasons, we need not address whether the agreement is enforceable despite the fact that it was not approved by the WCJ as Appellant contends is required under Sections 52–5–12(C), –13, and –14.

## CONCLUSION

{23} We affirm the WCJ's determinations.

{24} **IT IS SO ORDERED.**

I CONCUR: CELIA FOY CASTILLO, Judge and MICHAEL D. BUSTAMANTE, Judge (specially concurring).

BUSTAMANTE, Judge (specially concurring).

{25} I fully concur in the discussion and resolution of the "Lump Sum for Debt" issue. I concur in the result of the "Validity" issue. In my view the May 19, 2000, agreement was clearly subject to the requirements of Sections 52–5–13 and –14, and is therefore void. I regret the opinion does not conduct a full analysis of the issue. There is nothing in these provisions that limit the application to global settlements of medical benefits, and I see no policy reason to so limit them. To the contrary, as this case makes clear, partial settlements of benefits can be of critical importance to a badly injured worker.

{26} The requirement for WCJ approval can and should act as a check on hasty and ill-advised decisions by workers. I note that this settlement was reached relatively soon after the injury and before Worker hired his own attorney. These circumstances by themselves give me pause, and I am sure, would have given the WCJ pause before approving the settlement. At the very least, the WCJ could have asked questions designed to force Worker to think the matter through more carefully. Whether Worker would have done so, of course, we do not know. More important is ensuring that the WCA maintains the level of overall control of these proceedings that I think the Legislature intended.

{27} I must concur in the result, however, because of Appellant's approach to the case. Appellant chose an "all or nothing" strategy in this litigation. I agree she is not entitled to the full amount of costs of the new home or the full mortgage. She is entitled to a fresh look at what the reasonable cost of accommodating Worker's injury would have been. She put on no evidence other than the full cost. As such, Appellant provided no other basis for considering whether the set-

tlement was unreasonable or not. This evidentiary failure, based on an unsound litigation strategy, forces me, however reluctantly, to concur in the result.