2007-NMCA-124

167 P.3d 949

**Jared BENNY, Worker–Appellant,**

v.

**MOBERG WELDING and New Mexico Mutual Casualty Company, Employer/Insurer–Appellees.**

**No. 26,630.**

Court of Appeals of New Mexico.

June 28, 2007.

Certiorari Denied, No. 30,561, Aug. 9, 2007.

Titus & Murphy Law Firm, Victor A. Titus, Farmington, NM, for Appellant.

Miller Stratvert, P.A., Robin A. Goble, Seth V. Bingham, Albuquerque, NM, for Appellees.

**OPINION**

BUSTAMANTE, Judge.

{1} After agreeing to a stipulated compensation order setting a ten percent impairment rating, Jared Benny requested temporary total disability benefits because his medical condition had worsened. His employer, Moberg Welding, objected because Benny had asked for and received a stipulated lump sum settlement pursuant to NMSA 1978, § 52–5–12 (2003). The Workers' Compensation Judge (WCJ) agreed with the Employer and granted summary judgment in its favor. Benny appeals and we reverse.

{2} The WCJ's order on Benny's complaint provides a succinct summary of the course of proceedings and facts in the case. We can do no better than to quote him:

The underlying material facts are not in dispute. Worker suffered a compensable accident on June 15, 2004. Approximately three months later, on September 10, 2004, Worker returned to work earning a comparable wage. Dr. Peter Saltzman placed Worker at maximum medical improvement on April 18, 2005 and assigned a 10% whole person impairment. Worker had been working for almost a year when he filed a petition for a return to work lump sum on August 16, 2005. This Court reviewed the petition and, based upon the pleadings, entered an order of approval at August 31, 2005. Worker saw his treating physician, Dr. Peter Saltzman on August 29, 2005, 13 days after filing the petition for lump sum. Dr. Saltzman found Worker to be suffering from disabling pain which at that point in time prevented Worker from continuing to work and interfered with Worker's activities of daily living. Dr. Saltzman noted that Worker had evidence of degenerative arthritic changes on previous diagnostic studies and that Worker's lumbar spine condition had not improved. At the August 29, 2005 visit Dr. Saltzman recommended a spinal fusion. Worker underwent low back fusion surgery on November 11, 2005. Worker has not returned to work since undergoing back surgery. Worker filed a claim on September 29, 2005 requesting reinstatement of temporary total disability benefits.

{3} The WCJ decided that "[t]he plain language of [Section] 52–5–12(B) is that when a Worker receives his benefit income in a lump sum he is not entitled to *any* additional benefit income for the compensable injury or disablement ... includ[ing] temporary total disability benefits." The WCJ decided he did not have to resolve any factual issues as to whether Benny's condition had worsened because even if it had, Section 52–5–12(B)'s limitation would trump other provisions in the Workers Compensation Act (WCA) because it "is the more specific statute." Given that the relevant facts are not disputed, we apply a de novo standard of review. *Paradiso v. Tipps Equip.*, 2004–NMCA–009, ¶ 23, 134 N.M. 814, 82 P.3d 985.

{4} We, of course, begin our analysis with the language of the WCA. Section 52–5–12(B)

addresses so-called return-to-work lump sum payments and provides in pertinent part:

B. With the approval of the workers' compensation judge, a worker may elect to receive compensation benefits to which he is entitled in a lump sum if he has returned to work for at least six months, earning at least eighty percent of the average weekly wage he earned at the time of injury or disablement. If a worker receives his benefit income in a lump sum, he is not entitled to any additional benefit income for the compensable injury or disablement and he shall only receive that portion of the benefit income that is attributable to the impairment rating as determined in Section 52–1–24 NMSA 1978 [(1990)]. In making lump-sum payments, the payment due the worker shall not be discounted at a rate greater than a sum equal to the present value of all future payments of compensation computed at a five-percent discount compounded annually.

NMSA 1978, § 52–5–9 (1989), addresses modification of compensation orders and provides:

A. Compensation orders are reviewable subject to the conditions stated in this section upon application of any party in interest in accordance with the procedures relating to hearings. The workers' compensation judge, after a hearing, may issue a compensation order to terminate, continue, reinstate, increase, decrease or otherwise properly affect compensation benefits provided by the Workers' Compensation Act ... or the New Mexico Occupational Disease Disablement Law or in any other respect, consistent with those acts, modify any previous decision, award or action.

B. A review may be obtained upon application of a party in interest filed with the director at any time within two years after the date of the last payment or the denial of benefits upon the following grounds:

(1) change in condition[.]

NMSA 1978, § 52–1–56 (1989), describes how and when hearings on petitions for diminution, increase and termination of compensation are considered:

The workers' compensation judge may, upon the application of the employer, worker or other person bound by the compensation order, fix a time and place for hearing upon the issue of claimant's recovery.... If it appears upon such hearing that the disability of the worker has become more aggravated or has increased without the fault of the worker, the workers' compensation judge shall order an increase in the amount of compensation allowable as the facts may warrant.

{5} Our primary task in construing statutory language is to effect legislative intent. *Souter v. Ancae Heating & Air Conditioning*, 2002–NMCA–078, ¶ 13, 132 N.M. 608, 52 P.3d 980 (summarizing our general approach to statutory interpretation). We start with the language itself, giving effect to its plain meaning where appropriate while being careful not to "be misled by simplicity of language when the other portions of a statute call its meaning into question, or the language of a section of an act conflicts with an overall legislative purpose." *Leo v. Cornucopia Rest.*, 118 N.M. 354, 357, 881 P.2d 714, 717 (Ct.App.1994) (construing the WCA, citing *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994)). "When considering sections of the Workers' Compensation Act, we consider the language of the particular section in the context of the entire Act." *Henington v. Technical–Vocational Inst.*, 2002–NMCA–025, ¶ 32, 131 N.M. 655, 41 P.3d 923 (citing *Draper v. Mountain States Mut. Cas. Co.*, 116 N.M. 775, 777, 867 P.2d 1157, 1159 (1994)).

{6} The WCJ apparently did not consider the effect, if any, that the provisions of Sections 52–5–9 or 52–1–56 might have on the issue *before him; neither does his Order display any consideration of the legislative policies that might inform his decision.* In deciding that he did not have to consider any other portion of the WCA because of the supposed clarity of Section 52–5–12(B), the WCJ fell victim to the error of "beguiling simplicity" of the plain meaning rule against which the Supreme Court cautioned in *Helman*. 117 N.M. at 353, 871 P.2d at 1359.

{7} The Employer emphasizes the portion of Section 52–5–12(B) which states that "[i]f a

worker receives his benefit income in a lump sum, he is not entitled to any additional benefit income for the compensable injury or disablement." We do not agree that this language is so clear that no further analysis is required. First, the language the Employer emphasizes is only part of the sentence. The remainder of the same sentence limits the amount that can be paid in a lump sum to the portion "attributable to the impairment rating as determined in [NMSA 1978, § ] 52–1–24." This provision disallows the application of any modifiers when calculating the lump sum. Thus, the employee pays a price for the privilege of getting a lump sum. *Cabazos v. Calloway Constr.*, 118 N.M. 198, 201, 879 P.2d 1217, 1220 (Ct.App.1994) (holding that the Section 52–5–12(B) limitation on lump sum calculation is not to be applied to lump sums allowed under Section 52–5–12(C)). The inclusion of both concepts in the same sentence lends support to a view that the provision is essentially backward-looking only; that is, an employee gives up any further claim for compensation for his condition as it exists as of the time the lump sum is paid. Second, even in isolation, the language Employer relies on can reasonably be read to refer only to the *"compensable injury or disablement"* as it exists as of the time the lump sum is paid. *Cabazos*, 118 N.M. at 200, 879 P.2d at 1219.

{8} More importantly, however, relying solely on Section 52–5–12(B) gives short shrift to other provisions of the Act which address the concept of modification of awards when changes in medical circumstances occur. Section 52–5–9(A) gives the WCJ the power to "modify *any* previous decision, award or action" when circumstances change. (Emphasis added.) The Employer does not make any effort to explain why this broad language should not or cannot be taken into account when deciding what Section 52–5–12(B) means. Similarly, Section 52–1–56 provides that a WCJ "*shall* order an increase in the amount of compensation allowable as the facts may warrant" if the worker proves that his disability "has become more aggravated or has increased without the fault of the worker." (Emphasis added.) To ignore Sections 52–5–9(A) and 52–1–56 would be to render their apparently unlimited provisions surplusage, contrary to ordinary rules of statutory construction. *Souter,* 2002–NMCA–078, ¶ 13. In addition, to do so would ignore a consistent body of case law in New Mexico confirming the power of modification as a central concept in our workers' compensation jurisprudence.

{9} *Henington* illustrates the point. In *Henington,* the worker requested an increase for benefits based on the worsening of his left knee. 2002–NMCA–025, ¶ 9. The employer defended on a number of grounds, including that there could be no modification because there was no order of any kind in place that the request was late for a variety of reasons. *Id.* ¶¶ 11, 18. The WCJ ruled in favor of the worker and we affirmed, holding that no formal order was required for Section 52–1–56 to apply. *Henington,* 2002–NMCA–025, ¶ 13. Our discussion in *Henington* included a canvass of prior cases upholding the availability of modification under Sections 52–1–56 and 52–5–9, and recognizing its importance in our workers' compensation law. *Henington,* 2002–NMCA–025, ¶¶ 13–16. Most pertinent to this case is *Glover v. Sherman Power Tongs,* 94 N.M. 587, 613 P.2d 729 (Ct.App.1980). In *Glover,* the worker was awarded benefits for a scheduled injury to his hand. The award was paid in full before any judgment was entered. *Id.* at 588, 613 P.2d at 730. A year later the worker applied for an increase in benefits asserting that he was now totally disabled. *Id.* The employer argued that no modification was available because the worker's disability had ended when he received all the payments to which he was entitled for the scheduled injury. We held the "any judgment for compensation in a workman's compensation case may be reopened during the remainder of the statutory period after the original judgment, for the purpose of requesting an increase or decrease in compensation benefits." *Id.* at 589, 613 P.2d at 731.

{10} In *Henington,* we observed that our Supreme Court and this Court had consistently

> held that claims under Section 52–1–56 can be filed at any time during the maximum period that a worker could have received benefits, even if the original judgment awarded benefits for less than that period of time and even if the original judgment had been fully paid some time earlier.

*Henington*, 2002–NMCA–025, ¶ 33. We see no substantive difference between the situation where benefits have been fully paid over time and a lump sum payment insofar as the availability of modification is concerned. The important policy of meeting the effects of changes in a worker's physical condition is served by allowing necessary modifications in both instances. Absent more specific direction from the legislature, we hold that the general language of Section 52–5–12(B) is not enough to cut off all modification remedies. To the extent *Souter* includes language that could be construed to indicate otherwise, it is disapproved.

{11} This matter is reversed and remanded for further proceedings consistent herewith.

{12} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and RODERICK T. KENNEDY, Judge.