This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**FRANCES L. FLISS,**

      Worker-Appellant,

v.                                             **NO. 29,166**

**BLAKE'S LOTABURGER and**
**BENCHMARK INSURANCE COMPANIES,**

      Employer/Insurer-Appellee.

**APPEAL FROM THE WORKER'S COMPENSATION ADMINISTRATION**
**Victor Lopez, Workers' Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Appellant

Madison, Harbour & Mroz, P.A.
Gregory D. Steinman
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**GARCIA, Judge.**

      The issue in this case is whether the worker's compensation judge (WCJ)

incorrectly interpreted the Workers' Compensation Act regarding lump-sum settlement agreements. We conclude there was no error and affirm.

**BACKGROUND**

Frances L. Fliss (Worker) appeals from a compensation order of the WCJ. Worker raises several issues on appeal: (1) the WCJ erred by denying approval of the parties' lump-sum payment agreement; (2) the Workers' Compensation Administration (WCA) could not deny Worker her constitutionally protected right to acquire, possess, and protect workers' compensation benefits; (3) the Act violates the Equal Protection Clause of the United States and New Mexico Constitutions by allowing all other litigants to settle disputed claims while limiting workers' compensation litigants the same right to settle.

According to Worker's brief in chief, the facts are as follows. Worker was injured while working for Blake's Lotaburger (Employer). Prior to trial on Worker's compensation for her injuries, Worker, Employer, and Benchmark Insurance Company (Insurer) entered into a settlement agreement. The settlement agreement included a lump-sum payment of $50,000, continuing medical benefits, and payment of attorney fees by Employer/Insurer. After a settlement conference where the parties presented the proposed settlement to the WCJ, the WCJ expressed concerns about the lump-sum payment and asked Worker to file a petition for approval of lump-sum

payment. In response, the parties filed an application with a stipulated compensation order attached as an exhibit. In the application, the parties sought approval of the settlement agreement. Worker also included an affidavit verifying her desire for the lump-sum payment and expressing her understanding of the agreement. After a hearing, the WCJ denied the proposed stipulated compensation order. The WCJ later approved a partial lump-sum payment for Worker to pay debts that had accrued during her disability. After additional settlement attempts and negotiations, the parties agreed to another compensation order with periodic payments, which the WCJ approved.

Worker's appeal focuses on the district court's denial of the first settlement agreement with a lump-sum payment. Employer/Insurer filed an answer brief stating that it did not have a position on Worker's argument and declining to participate further in the appeal.

**DISCUSSION**

**I. WCJ Did Not Err in Refusing to Approve the First Settlement Agreement Including a Lump-Sum Payment**

Worker contends that the WCJ erred in denying the first settlement agreement including the lump-sum payment because the WCJ "focused too narrowly upon [NMSA 1978, Section 52-5-12 (2009)] as being the insurmountable hurdle to approval of the lump sum payment agreement." Worker argues the WCJ could have validly

3

approved her settlement agreement pursuant to NMSA 1978, Sections 52-5-13 (1989) and 52-5-14 (1990). The facts in this case are undisputed. "We therefore review the issue de novo and determine whether the applicable law was correctly applied to the facts." *Paradiso v. Tipps Equip.*, 2004-NMCA-009, ¶ 23, 134 N.M. 814, 82 P.3d 985 (filed 2003).

Lump-sum payments are disfavored in workers' compensation cases. § 52-5-12(A) ("It is stated policy for the administration of the [Act] . . . that it is in the best interest of the injured worker or disabled employee that the worker or employee receive benefit payments on a periodic basis."); *Sommerville v. Sw. Firebird*, 2008-NMSC-034, ¶ 6, 144 N.M. 396, 188 P.3d 1147. As a result, the Legislature has restricted their use. *See* §§ 52-5-12 to -14; *Cabazos v. Calloway Constr.*, 118 N.M. 198, 200-01, 879 P.2d 1217, 1219-20 (Ct. App. 1994) ("Subsection A of [Section 52-5-12] declares that lump-sum payments of benefits are against legislative policy *except to the extent that they are specifically authorized* in Subsections B, C, and D.") (emphasis added). These restrictions are aimed at protecting workers' financial viability. *See Sommerville*, 2008-NMSC-034, ¶ 7 ("Payment of disability benefits in a lump sum creates a risk that the worker will need to rely on public benefits during the time that periodic disability payments would otherwise be available." (alteration omitted) (internal quotation marks and citation omitted)); *see also Cabazos*, 118 N.M.

4

at 201, 879 P.2d at 1220.

Section 52-5-12(A) expressly states that "[e]xcept as provided in this section, lump-sum payments in exchange for the release of the employer from liability for future payments of compensation or medical benefits shall not be allowed." As explained in *Sommerville*, 2008-NMSC-034, ¶ 6:

> The Act's express policy is that it is in an injured worker's best interest to receive workers' compensation benefits on a periodic basis, rather than in a lump sum. Section 52-5-12(A). The two exceptions to this policy are set out in Section[] 52-5-12(B) and (C). Both sections allow a worker, with the approval of the WCJ, to elect to receive a lump sum payment under specified circumstances.

Section 52-5-13 requires WCJ approval for all lump-sum settlements and requires the WCJ to "assure that the worker or his dependents understand the terms and conditions of the proposed settlement." Section 52-5-14(A) states, "If the [WCJ] finds the lump-sum payment agreement to be fair, equitable and consistent with the provisions of the [Act] . . ., he shall approve the agreement by order. . . . The [WCJ] may refuse to approve a settlement if he does not believe that it provides substantial justice to the parties."

Worker does not contend that the exceptions set forth in Section 52-5-12(B), (C) or (D) apply to her case. Instead, Worker argues that the restrictions under Section 52-5-12 are not applicable "[s]ince there was an agreement that was considered fair and equitable, and promoted substantial justice among the parties"

5

under Sections 52-5-13 and 52-5-14. Worker also argues that the WCJ's reading of Section 52-5-12 is an overly simplistic application of the plain meaning rule. Worker's argument is inconsistent with the plain language of the Act and with basic principles of statutory interpretation. *See Benny v. Moberg Welding*, 2007-NMCA-124, ¶ 5, 142 N.M. 501, 167 P.3d 949 (stating that when construing statutory language, our main goal is to effect legislative intent and that this is accomplished by giving effect to the plain meaning of the language and by considering each section of the Act in the context of the entire Act).

The Legislature clearly stated its preference for periodic payments and for limiting lump-sum payments in workers' compensation cases. *See* § 52-5-12(A); *Paradiso*, 2004-NMCA-009, ¶ 25. A two step process was created for lump sum payments. Under the first step, the proposed payment must fit within one of the specific periodic payment exceptions set forth in Subsections B, C, or D of Section 52-5-12. If the first step is met, then the second step requires that the WCJ 1) determine whether the terms and conditions of the proposed lump sum settlement are fully understood by the worker pursuant to Section 52-1-13, and 2) pursuant to Section 52-5-14, determine whether the settlement provides substantial justice to the parties and is also fair, equitable and consistent with the provisions of the Act. In the present case, the lump-sum settlement agreement presented to the WCJ was

inconsistent with another provision of the Act, namely meeting one of the exceptions allowed under Section 52-5-12. If we ignore Section 52-5-12, as Worker suggests, we would render the language in the section to be meaningless surplusage, which is "contrary to ordinary rules of statutory construction." *Benny*, 2007-NMCA-124, ¶ 8 (reading the Act as a whole so as not to render any section surplusage). Since the lump-sum payment did not conform to Section 52-5-12, the WCJ was correct in denying the first settlement agreement. *See Sommerville*, 2008-NMSC-034, ¶¶ 8-9 (explaining that "[l]ump sum agreements that do not follow the express requirements of the Act are not enforceable[,]" and determining the lump-sum agreement between the worker and employer/insurer was invalid because the WCJ did not ensure that the worker understood the lump-sum settlement agreement as required by Section 52-5-13); *Padilla v. Frito-Lay, Inc.*, 97 N.M. 354, 355-57, 639 P.2d 1208, 1209-11 (Ct. App. 1981) (approving a lump-sum payment after confirming that there were special circumstances justifying the lump-sum payment as required under the previous version of the Act).

Worker also argues that our interpretation of the Act conflicts with the stated purpose of the Act as set forth in NMSA 1978, Section 52-5-1 (1990). Section 52-5-1 states that the Act should "be interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost

7

to the employers." Worker argues that by limiting lump-sum settlement agreements, we are contradicting the legislative goal of quick and efficient resolution to these types of cases. Worker's argument is misplaced. Our holding does not frustrate the stated purpose of the Act. We are continuing to encourage quick and efficient resolution while also protecting the long-term financial viability of workers as required under Section 52-5-12. We are not discouraging settlement agreements or lump-sum payments that are in compliance with the Act.

**II. Constitutional Arguments Were Not Preserved**

Worker makes several additional constitutional arguments. There is no evidence in the brief in chief that these arguments were presented or preserved below. *See* Rule 12-216 NMRA; *Pineda v. Grande Drilling Corp.*, 111 N.M. 536, 539-40, 807 P.2d 234, 237-38 (Ct. App. 1991) (recognizing in a workers' compensation case that issues raised on appeal must be properly preserved below). Worker does not provide citations to the record where these arguments were preserved below. Worker also fails to indicate in the statement of the case section of her brief in chief that any presentation or argument about the constitutional issues took place before the WCJ. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 (filed 2004) ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that

citation to the record or any obvious preservation, we will not consider the issue.").

We therefore decline to address Worker's constitutional arguments. *See id.*

**CONCLUSION**

We affirm the decision of the WCJ to deny the first settlement agreement with a lump-sum payment.

**IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**I CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

**CYNTHIA A. FRY, Chief Judge (concurring).**

9

**FRY, Chief Judge (concurring).**

I concur in the majority opinion because I believe the result is compelled by our Supreme Court's decision in *Sommerville*. I write separately to express my concern that we may be reading *Sommerville* too narrowly and that as a result, Worker and others like her are being denied the opportunity to settle their claims in a manner that is fair and equitable and in the worker's best interest.

In the present case, the parties' proposed stipulated compensation order stated that Worker claimed PPD benefits at 99 percent, with a present value of $70,523. Employer claimed that Worker was entitled to PPD benefits at 47 percent, with a present value of $20,354. In this proposed order, Worker and Employer agreed that Worker would receive a lump-sum of $50,000, Worker would waive any rights to additional indemnity benefits, Employer would continue to provide Worker with all reasonable and necessary medical benefits, and Employer would pay Worker's attorney's fee in its entirety. Attached to the proposed compensation order was a verification, in which Worker attested that she believed the lump sum settlement was in her best interest because she wished to use the funds to pay off debts with high interest rates, to obtain vocational retraining, and to pay for medial treatment for her husband's cancer.

In the face of this proposed compensation order and Worker's

verification—both of which suggest that the proposed settlement would be in Worker's best interest—the WCJ refused to approve the first settlement agreement because he read the Act as permitting lump sum settlements only under the very narrow circumstances set forth in Section 52-5-12(B) and (C). This interpretation of the Act appears to be consistent with the Supreme Court's opinion in *Sommerville*. *See* 2008-NMSC-034, ¶ 6 ("The Act's express policy is that it is in an injured worker's best interest to receive workers' compensation benefits on a periodic basis, rather than in a lump sum. The two exceptions to this policy are set out in Section[] 52-5-12(B) and (C)." (internal citation omitted)). The Court emphasized that the Act disfavors lump sum payments, *Sommerville*, 2008-NMSC-034, ¶¶ 7, 13, and stated that "[l]ump sum agreements that do not follow the express requirements of the Act are not enforceable." *Id.* ¶ 9.

Given the language in *Sommerville*, it appears that the WCJ interpreted the Act consistent with the Supreme Court's directive. The only two exceptions to the preference for periodic payments, according to *Sommerville*, are the lump sum payment after return to work in Subsection B and the lump sum payment for the sole purpose of paying debts in Subsection C. *Id.* ¶ 6. Worker does not argue that either exception applies to her. Consequently, the WCJ concluded that he could not approve the proposed settlement agreement.

11

I am concerned that the WCJ's and our reading of *Sommerville* is too narrow. In *Sommerville*, the focus of the Court's opinion was not the applicability of the exceptions in Section 52-5-12(B) and (C), nor did it directly address the question we face, which is whether a WCJ may approve a lump sum settlement that does not precisely fit within either of those exceptions. Rather, the Court was primarily concerned with ensuring that the WCJ complied with the "affirmative duty to ensure that the worker understands the lump sum settlement," *Sommerville*, 2008-NMSC-034, ¶ 8, and that "a worker's best interest [is] at the forefront when dealing with lump sum settlements." *Id.* ¶ 13. Thus, it appears that the Court's emphasis on the Act's disfavoring of lump sum settlements and on strict adherence to the Act's requirements served primarily to highlight the need for the WCJ's active vigilance when lump sum settlements are at issue.

I am not entirely convinced that our Supreme Court would read the Act as prohibiting a lump sum settlement such as the one proposed and rejected in this case. If the WCJ plays an active role in scrutinizing a proposed settlement, ensures that the worker understands the consequences of the settlement, and finds that the settlement is fair, equitable, and in the worker's best interest, I think it is within the WCJ's discretion to approve such a settlement. Indeed, this approach seems to comport with the Legislature's intentions, as evidenced by the 2009 amendments to Section 52-5-12.

12

In these amendments, the Legislature added the following provision:

> D. The worker and employer may elect to resolve a claim for injury with a lump-sum payment to the worker for all or a portion of past, present and future payments of compensation benefits, medical benefits or both in exchange for a full and final release or an appropriate release of the employer from liability for such compromised benefits. The proposed lump-sum payment agreement shall be presented to the workers' compensation judge for approval, and a hearing shall be held on the record. The workers' compensation judge shall approve the lump-sum payment agreement if the judge finds that:

> (1) a written agreement describing the nature of the proposed settlement has been mutually agreed upon and executed by the worker and the employer;

> (2) the worker has been fully informed and understands the terms, conditions and consequences of the proposed settlement;

> (3) the lump-sum payment agreement is fair, equitable and provides substantial justice to the worker and employer; and

> (4) the lump-sum payment agreement complies with the requirements for approval set forth in Sections 52-5-13 and 52-5-14.

Section 52-5-12(D). This new subsection clearly contemplates the possibility that a worker and an employer may properly agree to a lump sum settlement, like the one before us, that falls outside the limited circumstances set out in Subsections (B) and

13

(C).  Nonetheless, given the language in *Sommerville*, I believe we must affirm the WCJ's rejection of the first settlement agreement.

_____

**CYNTHIA A. FRY, Chief Judge**