This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38644

**ARTHUR NIETO,**

   Worker-Appellant,

v.

**LOWE'S COMPANY INC. and
NEW HAMPSHIRE INSURANCE
COMPANY (C/O SEDGWICK),**

   Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Anthony Couture, Workers' Compensation Judge**

LeeAnn Ortiz
Albuquerque, NM

for Appellant

Allen, Shepherd & Lewis, P.A.
Joshua A. Collins
Katrina Bagley Brown
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}**   Arthur Nieto (Worker) appeals the denial of temporary total disability (TTD) benefits from June 27, 2018, until the date he reached maximum medical improvement (MMI), January 24, 2019. Under NMSA 1978, Section 52-1-25.1(B) (2017) of the Workers' Compensation Act (the Act), and subject to exceptions, "[i]f, prior to the date of [MMI], an injured worker's health care provider releases the worker to return to work and the employer does not make a reasonable work offer at the worker's pre-injury

wage, the worker shall receive [TTD] compensation benefits equal to two-thirds of the worker's pre-injury wage." Under Section 52-1-25.1(C), "[i]f, prior to the date of [MMI], an injured worker's health care provider releases the worker to return to work and the worker returns to work at less than the worker's pre-injury wage, the worker shall receive [TTD] compensation benefits equal to two-thirds of the difference between the worker's pre-injury wage and the worker's post-injury wage."

**{2}** The central issue in this appeal is whether the Workers' Compensation Judge (the WCJ) correctly applied Section 52-1-25.1(C) to the dates at issue instead of Section 52-1-25.1(B) to Worker's concurrent employment circumstances. Resolving Worker's appeal requires us to interpret provisions in Section 52-1-25.1. For the reasons explained below, we affirm the WCJ's finding that (1) Section 52-1-25.1(B) does not apply for the weeks disputed, and therefore Worker was not entitled to TTD benefits at the maximum compensation rate for those weeks; and (2) Worker has not carried his burden on appeal of establishing that the WCJ erred by applying Section 52-1-25.1(C).

## BACKGROUND

**{3}** Lowe's Company, Inc. (Employer) employed Worker. The Department of Defense (DOD) also employed Worker while Worker was employed by Lowe's. On May 11, 2018, Worker suffered an injury with Employer. Worker earned a pre-injury weekly average wage of $207.89 from Employer and $1,120.54 from the DOD. The parties combined those numbers and stipulated to a pre-injury average weekly wage (AWW) of $1,328.43.

**{4}** After his injury, starting the week of June 3, 2018, Worker returned to work for the DOD at his pre-injury wage of $1,120.54. Worker returned to work with Employer, earning inconsistent wages until he was laid off by Employer on July 13, 2018. Employer paid the maximum TTD rate of $796.96 from May 21, 2018, until June 28, 2018. Worker reached MMI on January 24, 2019.

**{5}** Prior to Worker's formal hearing, Worker filed a motion for partial summary judgment. Following a hearing on the motion, the WCJ, in his order on Worker's motion for partial summary judgment, denied Worker's motion, and ordered that Worker was entitled to TTD of $796.96 for those weeks before MMI that Worker was not earning his pre-injury AWW with either Employer or DOD. In the order, the WCJ found, inter alia, that it would be unfair to Employer to return Worker to his combined weekly wage of $1,328.43 or to pay TTD at the maximum compensation rate when Worker was still employed at his pre-injury wage by DOD. The WCJ incorporated his prior order on Worker's motion for partial summary judgment into his compensation order, which was filed on December 5, 2019. Worker appeals.

## DISCUSSION

### I. Appealability

**{6}** Before we address the merits of Worker's appeal, Employer challenges whether Worker's appeal is reviewable. Employer contends Worker is barred from appealing because he failed to file an interlocutory appeal after the issuance of the order on Worker's motion for partial summary judgment within the deadline as prescribed by Rule 12-203(A) NMRA.[1] We disagree.

**{7}** Worker is appealing from the compensation order, which he claims erroneously denied him additional TTD benefits. The compensation order incorporates by reference the order on Worker's motion for partial summary judgment. While the compensation order fully disposed of the claims in this case, the partial summary judgment order did not.

**{8}** "The general rule in New Mexico for determining the finality of a judgment is that an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." *Zuni Indian Tribe v. McKinley Cnty. Bd. of Cnty. Comm'rs*, 2013-NMCA-041, ¶ 16, 300 P.3d 133 (internal quotation marks and citation omitted). "The term 'finality' is to be given a practical, rather than a technical, construction." *Massengill v. Fisher Sand & Gravel Co.*, 2013-NMCA-103, ¶ 16, 311 P.3d 1231 (alteration, internal quotation marks, and citation omitted). Moreover, an "appeal from [a] final judgment draws [into] question all earlier nonfinal orders and rulings that produced [the] judgment." *Govich v. N. Am. Sys., Inc.*, 1991-NMSC-061, ¶ 14, 112 N.M. 226, 814 P.2d 94. Accordingly, the compensation order is a final, appealable order from which Worker has timely appealed.

**{9}** Here, the partial summary judgment order was incorporated into the compensation order, making it part and parcel of that order and appealable for the reasons set forth above. The partial summary judgment order did not dispose of all claims in the case as it was a motion that only partially disposed of a claim in the case. *See Mabrey v. Mobil Oil Corp.*, 1972-NMSC-023, ¶ 9, 84 N.M. 272, 502 P.2d 297 ("[T]he summary judgment was not an appealable order when rendered because there was no express determination making it a final judgment. The summary judgment became an appealable final judgment upon the entry of the judgment of June 8, 1971, because at that point all the claims had been adjudicated."); *see also* Rule 1-054(B) NMRA (explaining that a judgment is not final when it does not adjudicate all claims).

**{10}** Therefore, we conclude that this appeal is properly before this Court.

## II. Standard of Review

**{11}** In this appeal, we consider what amount of additional TTD benefits, if any, are owed to a worker with concurrent employment at the time of their injury and who is only returned to pre-injury wages by the non-injury employer and not by their at-injury

---

[1] An appeal from an interlocutory order containing the statement prescribed by NMSA 1978, Section 39-3-3(A)(3) (1972) or NMSA 1978, Section 39-3-4(A) (1999) is initiated by filing an application for interlocutory appeal with the appellate court clerk within fifteen days after the entry of such order in the district court. *See* Rule 12-203(A).

employer. Worker argues that, pursuant to Section 52-1-25.1(B) of the Act, he is entitled to TTD benefits for all weeks leading up to MMI when Worker was not earning his AWW of $1,328.43 (the AWW of Employer and DOD combined), including the dates when Worker returned to his pre-injury wage with the DOD but not Employer. Employer disagrees and argues that Worker's contention would have erroneously required the WCJ to disregard the wages Worker continued to earn post-injury from his other employer and would lead to an unfair result. The WCJ denied Worker's motion for partial summary judgment but, pursuant to Section 52-1-25.1(C), permitted benefits of two-thirds of the difference between Worker's pre-injury wage and Worker's post-injury wage.[2] Consequently, we are called upon to interpret Section 52-1-25.1(B) and (C) to determine whether the WCJ correctly applied Section 52-1-25.1(C) under these circumstances. Because we are interpreting the meaning of a statute, our review is de novo. *See Baca v. Los Lunas Cmty. Programs*, 2011-NMCA-008, ¶ 11, 149 N.M. 198, 246 P.3d 1070 ("We review the WCJ's legal conclusions regarding statutory construction de novo.").

**{12}**    Our "guiding principle when construing statutes is to determine and give effect to legislative intent." *Fowler v. Vista Care*, 2014-NMSC-019, ¶ 7, 329 P.3d 630 (internal quotation marks and citation omitted). "To discern the Legislature's intent, we rely on the classic canons of statutory interpretation and look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* (internal quotation marks and citation omitted). "Statutory language that is clear and unambiguous must be given effect" unless the result would be "absurd, unreasonable, or contrary to the spirit of the statute." *Id.* (internal quotation marks and citations omitted). In other words, while the existence of a plain meaning might normally end our inquiry, it may nevertheless be necessary to examine, inter alia, the history, background, and overall structure of the statutory provision being construed, as well as the purpose of the statute. *See id.* ¶¶ 7, 13; *see also Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 29, 146 N.M. 453, 212 P.3d 341 (observing that, where the plain language of a statute is clear, our statutory construction inquiry should normally end, but considering other principles of statutory construction to the extent the language could be considered ambiguous); *Massengill*, 2013-NMCA-103, ¶¶ 7-12 (examining the employer's contentions against applying the plain meaning of the statute). Thus, we "exercise caution in relying only on the plain language of a statute because its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning." *Fowler*, 2014-NMSC-019, ¶ 13 (alteration, internal quotation marks, and citation omitted); *see also Benny v. Moberg Welding*, 2007-NMCA-124, ¶ 5, 142 N.M. 501, 167 P.3d 949 (stating that while "[w]e start with the language itself, giving effect to its plain meaning where appropriate," we must be "careful not to be misled by simplicity of language when the other portions of a statute call its meaning into question, or the language of a

---

[2]Section 52-1-25.1(C), provides, in pertinent part, "If . . . an injured worker's health care provider releases the worker to return to work and the worker returns to work at less than the worker's pre-injury wage, the worker shall receive [TTD] compensation benefits equal to two-thirds of the difference between the worker's pre-injury wage and the worker's post-injury wage."

section of an act conflicts with an overall legislative purpose" (internal quotation marks and citation omitted)).

## III.     Section 52-1-25.1(B) Does Not Apply to These Facts

**{13}**     We begin our analysis with the plain language of Section 52-1-25.1(B) (Subsection B), which states:

> If, prior to the date of maximum medical improvement, an injured worker's health care provider releases the worker to return to work and the employer does not make a reasonable work offer at the worker's pre-injury wage, the worker shall receive temporary total disability compensation benefits equal to two-thirds of the worker's pre-injury wage.

**{14}**     Worker contends that Subsection B applies to the circumstances in this case because Employer did not offer Worker his pre-injury AWW of $207.89. Yet, when calculating TTD benefits, Worker argues that he is entitled to the maximum compensation of $796.96 based on his AWW of $1,328.43, essentially interpreting "pre-injury wage" to have two different meanings within Subsection B. We explain the discrepancy.

**{15}**     In Subsection B, "pre-injury wage" is discussed twice. First, if "the employer does not make a reasonable work offer at the worker's *pre-injury wage*," then "the worker shall receive [TTD] compensation benefits equal to two-thirds of the worker's *pre-injury wage*." Section 52-1-25.1(B) (emphases added). As to the first use of "pre-injury wage," Worker would define it as only the wages from the at-injury employer, as Worker argues that Subsection B is triggered because Employer did not offer Worker his pre-injury average weekly wage of $207.89. However, as to the second use of "pre-injury wage," Worker would define it as the AWW in the amount of $1,328.43 in order to receive TTD benefits at the maximum compensation rate. This interpretation cannot be correct because it would create an internal inconsistency within Subsection B, contrary to the principles of statutory construction which prescribe that "identical words within an act are to be given the same meaning." *See Taylor v. Waste Mgmt. of N.M., Inc.*, 2021-NMCA-026, ¶ 13, 489 P.3d 994. "In analyzing a statute, we must attempt to achieve internal consistency and avoid making any portion of the statute superfluous." *See Cordova v. Taos Ski Valley, Inc.*, 1996-NMCA-009, ¶ 22, 121 N.M. 258, 910 P.2d 334. Thus, we agree with the WCJ's holding—Subsection B is inapplicable under these circumstances.

## IV.     Worker Has Not Established That the WCJ Erred in Calculating TTD Benefits

**{16}**     Instead of applying Subsection B, the WCJ allowed Worker to receive benefits of two-thirds of the difference between Worker's pre-injury wage and Worker's post-injury wage. The WCJ concluded that this calculation was consistent with Section 52-1-25.1(C) (Subsection C), which provides:

If, prior to the date of [MMI], an injured worker's health care provider releases the worker to return to work and the worker returns to work at less than the worker's pre-injury wage, the worker shall receive [TTD] compensation benefits equal to two-thirds of the difference between the worker's pre-injury wage and the worker's post-injury wage.

**{17}** While we recently held that under the 2005 version of 52-1-25.1,[3] "Subsection C applies only when the at-injury employer offers work at less than the worker's preinjury wage," *Taylor*, 2021-NMCA-026, ¶ 12, we have not had occasion to apply any version of Subsection C to a case in which a worker had two employers at the time of the injury. In this appeal, Worker's briefing focuses on denial of TTD benefits under Subsection B and does not sufficiently develop any argument against the WCJ's application of Subsection C, and we therefore are not in a position to reach the merits of this issue. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (stating that the appellate court will not make arguments on behalf of the appellant or guess at what a party's argument might be). Because Worker has not carried his burden on appeal of rebutting the presumption that the challenged decision is correct, we affirm. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211.

**CONCLUSION**

**{18}** For the reasons stated above, we affirm.

**{19}** **IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**

---

[3]The 2005 version of Subsection C stated: "If, prior to the date of [MMI], an injured worker's health care provider releases the worker to return to work and the employer offers work at less than the worker's pre-injury wage, the worker is disabled and shall receive [TTD] compensation benefits equal to two-thirds of the difference between the worker's pre-injury wage and the worker's post-injury wage." Section 52-1-25.1(C) (2005). Under the 2017 amendment in Subsection C "employer offers" was deleted after "return to work and the," "worker returns to" was added, and after "pre-injury wage, the worker," deleted "is disabled and." *See* § 52-1-25.1(C) (2017).