The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>July 25, 2023</u>

**No. A-1-CA-39622**

**FOUR HILLS PARK GROUP, LLC**
**d/b/a FOUR HILLS PRIVATE**
**COMMUNITY,**

     Plaintiff-Appellee,

v.

**LEOPOLO MASABARAKIZA,**

     Defendant-Appellant.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**Jason M. Jaramillo, Metropolitan Court Judge**

Vance, Chavez & Associates, LLC
James A. Chavez
Albuquerque, NM

for Appellee

New Mexico Legal Aid, Inc.
Thomas Prettyman
Albuquerque, NM

for Appellant

**OPINION**

**DUFFY, Judge.**

{1}     In this appeal, we interpret two sections of the Mobile Home Park Act, NMSA 1978, §§ 47-10-1 to -23 (1983, as amended through 2007), to determine what is required when serving a notice of nonpayment of rent on a mobile home park resident. Defendant Leopolo Masabarakiza appeals from the metropolitan court's order granting restitution of the mobile home space to Plaintiff Four Hills Park Group, LLC, as well as the court's denial of Defendant's two counterclaims. Defendant argued below that Four Hills violated the requirements for serving notice found in Section 47-10-3(B) when it posted a notice of nonpayment of rent on his door but did not send a copy of the notice by certified mail. *See id.* ("If service is made by posting the notice, a copy of the notice shall also be sent by certified mail to the mobile home tenant."). The metropolitan court held that the Mobile Home Park Act does not require certified mailing of a nonpayment notice because the Act contains a specific and separate provision concerning nonpayment of rent, Section 47-10-6, which allows for notice by service or posting.

{2}     On appeal, Defendant renews his argument. We hold that a notice of nonpayment of rent is subject to the service requirements set forth in Section 47-10-3(B). Consequently, Four Hills was required to send the notice of nonpayment by certified mail in addition to posting. Because it did not do so, we reverse the

judgment in favor of Four Hills on its petition for termination of tenancy. We affirm the denial of Defendant's two counterclaims.

**BACKGROUND**

{3}    Four Hills posted a notice of nonpayment of rent on the front door of Defendant's mobile home. The notice was titled, "Three Day Notice of Non-Payment of Rent" and stated that Defendant owed a total of $397.86. The notice stated, "If the Total Amount Due shown above is not paid within three (3) days from the date of delivery set out below, the rental agreement is terminated." There were two boxes to check how the notice was served, either "personally delivered to Resident" or "posted/taped to front door of home," and the latter was checked.

{4}    After the time for curing the overdue rent had passed, Four Hills filed a petition in the metropolitan court seeking to evict Defendant. Three days after that, Defendant gave Four Hills a money order for $600. Four Hills accepted the money order but declined to deposit it and proceeded with its petition. Before trial, Defendant filed an answer and asserted as an affirmative defense that service of the three-day notice was insufficient. Defendant also asserted two counterclaims based on allegations that Four Hills had been overcharging Defendant. Following a bench trial, the metropolitan court issued a final judgment in favor of Four Hills and denied Defendant's counterclaims. This appeal followed.

**DISCUSSION**

**I.      Service of the Notice of Nonpayment Was Inadequate**

{5}      At issue is whether the service requirements for notices of termination in Section 47-10-3(B) of the Mobile Home Park Act apply to notices of nonpayment of rent under Section 47-10-6. Resolution of this issue requires us to construe these provisions of the Mobile Home Park Act. We review questions of statutory construction de novo. *State v. Rivera*, 2004-NMSC-001, ¶ 9, 134 N.M. 768, 82 P.3d 939. "The chief aim of statutory construction is to give effect to the intent of the [L]egislature." *Green Valley Mobile Home Park v. Mulvaney*, 1996-NMSC-037, ¶ 11, 121 N.M. 817, 918 P.2d 1317 (internal quotation marks and citation omitted). "We start with the language itself, giving effect to its plain meaning where appropriate." *Benny v. Moberg Welding*, 2007-NMCA-124, ¶ 5, 142 N.M. 501, 167 P.3d 949. "When construing individual statutory sections contained within an act, courts examine the overall structure of the act and consider each section's function within the comprehensive legislative scheme." *Britton v. Off. of Att'y Gen.*, 2019-NMCA-002, ¶ 27, 433 P.3d 320.

{6}      We begin with the statutory sections at issue. Section 47-10-3(A) states that "no tenancy in a mobile home park shall be terminated until a notice to quit has been served upon the mobile home resident." Subsection (B) lays out the service requirements for a notice to quit:

3

The notice to quit shall be served by delivering the notice to the mobile home tenant personally or by posting the notice at the main entrance of the mobile home. If service is made by posting the notice, a copy of the notice shall also be sent by certified mail to the mobile home tenant, return receipt requested. The date of a posting shall be included on the posted notice and on the copy mailed to the mobile home tenant and shall constitute the effective date of the notice.

Section 47-10-3(B). Under the plain terms of this section, if a landlord chooses to post the notice to quit, they must also send the notice by certified mail to the tenant. *Id.*

{7}     In addition to setting out the requirements for proper service, Section 47-10-3 identifies what the notice must state, including the reason for the termination of the tenancy. *See* § 47-10-3(A)(5). The reasons justifying termination are found in other sections of the Mobile Home Park Act. *See Mulvaney*, 1996-NMSC-037, ¶ 7. In Section 47-10-5, the Legislature identified a list of reasons why a tenancy "shall" be terminated. Failure to pay rent is not included in Section 47-10-5. Nonpayment is, instead, addressed specifically in Section 47-10-6, which provides another circumstance in which a lease "may" be terminated:

Any tenancy or other estate at will or lease in a mobile home park may be terminated upon the landlord's written notice to the tenant requiring, in the alternative, payment of rent and utility charges or the removal of the tenant's unit from the premises, within a period of not less than three days after the date notice is served or posted, for failure to pay rent when due.

*Id.*

4

{8} Despite the permissive language in Section 47-10-6 that the tenancy "may" be terminated if the overdue rent is not cured, landlords typically do not allow a tenant to continue living on the premises without paying rent; consequently, a tenant's failure to pay the overdue amount within the time specified in the notice places the tenant in jeopardy of having the lease terminated. The Mobile Home Park Act does not require the landlord to send a separate notice to quit in the event the overdue rent is not timely cured, and therefore, a notice of nonpayment under Section 47-10-6 functions as a notice of termination, i.e., a notice to quit, when the past-due rent is not paid. As such, a notice of nonpayment falls under the umbrella of Section 47-10-3, which by its plain language applies broadly to all notices that terminate a tenancy in a mobile home park. *See* § 47-10-3(A) (stating that "no tenancy in a mobile home park shall be terminated until a notice to quit has been served upon the mobile home resident").

{9} This construction conforms with the historical understanding that a notice of nonpayment is a notice to quit. *See El Dorado Inv. Co. v. Burrus*, 1923-NMSC-050, ¶ 8, 28 N.M. 551, 215 P. 819 (noting that before an action of forcible entry or unlawful detainer may be maintained, "three days' notice to quit must be given in writing to the defendant" by statute "to provide a short time within which a defaulting tenant might pay past-due rent and thereby defeat or obviate a forfeiture of his lease" (internal quotation marks omitted)); *N.M. Motor Corp. v. Bliss*, 1921-

NMSC-044, ¶ 11, 27 N.M. 304, 201 P. 105 (noting that a three-day notice to quit upon nonpayment of rent "was evidently designed to take the place of the common-law demand, and to provide a short time within which the tenant might pay the rent, and thus save the forfeiture").

{10} Likewise, this construction is also supported by the form approved by our Supreme Court for use as a three-day notice of nonpayment of rent under the Mobile Home Park Act. *See* Rule 4-921 NMRA (Form 4-921) (providing the civil form approved for notice of nonpayment of rent). The form contains two boxes to indicate how notice was served:

Service of notice:

[ ] personally delivered to resident
[ ] posted on the mobile home on _____ (date) and mailed
certified mail, return receipt requested

*Id.* (use note omitted). Form 4-921 also has a use note regarding service that states:

2.    Section 47-10-3 . . . provides that service of a notice to quit shall be served by delivering the notice to the tenant personally or by posting the notice at the main entrance of the mobile home and sending a copy to the tenant by certified mail, return receipt requested. If this notice is personally delivered to the resident, mailing or posting is not required. The date of posting must be included on the posted notice and on the copy mailed to the mobile home tenant.

6

*Id.* use note 2. On its face, Form 4-921 and its use notes indicate that our Supreme Court also views a notice of nonpayment as a notice to quit, subject to the service requirements set forth in Section 47-10-3(B).[1]

{11}   Four Hills' contrary argument is that a notice of nonpayment is not governed by Section 47-10-3 because Section 47-10-6 is a separate provision with its own service requirements. This is not the case. Section 47-10-6 states in relevant part that the tenancy may be terminated if the tenant does not pay the overdue amount "within a period of not less than three days after the date notice is served or posted, for failure to pay rent when due." Four Hills suggests that this language indicates that the landlord may "serve *or* post" the notice without any requirement to mail the notice. In context, however, Section 47-10-6 does not specify how service may be made, but rather, when the three-day clock to cure begins to run.

{12}   We also note that Four Hills' construction would effectively result in different service requirements depending on the reason for the termination—service of a notice of nonpayment could be accomplished by posting alone, whereas a notice to quit for any of the other reasons specified in the Mobile Home Park Act would require posting plus certified mailing. To accept such a distinction, we would have

---

[1]Four Hills states that it used Form 4-921 in this case, and the notice posted on Defendant's door states that it was "Civil Form 4-921." However, the form used by Four Hills had been modified from Form 4-921 to omit the language "and mailed certified mail, return receipt requested" from the checkbox for service by posting.

7

to conclude that our Legislature intended to provide less notice in situations where termination is based on nonpayment of rent than in other scenarios that result in termination of a tenancy. On the contrary, we believe this construction would frustrate the Legislature's intent of providing mobile home park tenants with additional protections given their "inherent vulnerability as a person who owns a home but leases the land on which that home is located." *Mulvaney*, 1996-NMSC-037, ¶ 12 (internal quotation marks and citation omitted). As our Supreme Court recognized, "[t]he difficulty in relocating one's home is not to be underestimated, especially since many of the residents of mobile home parks can ill afford the cost of moving the mobile home." *Id.*

{13} Four Hills otherwise argues that Section 47-10-6 of the Mobile Home Park Act is analogous to the section addressing nonpayment of rent in the Uniform Owner-Resident Relations Act (UORRA), NMSA 1978, Section 47-8-13(D) (1995). *See Mulvaney*, 1996-NMSC-037, ¶ 6 (stating that the Mobile Home Park Act supplements the UORRA); *see also* § 47-10-18 (stating that "the provisions of the [UORRA] shall apply to mobile home park owners and residents" unless they directly conflict with a provision of the Mobile Home Part Act). Four Hills notes that Section 47-8-13(D) of the UORRA allows an owner to "deliver, mail or post the three-day non-payment notice," i.e., that mailing is not required if the notice is posted. However, the UORRA directly conflicts with the service requirements set

8

forth in Section 47-10-3(B) of the Mobile Home Park Act. As our Supreme Court has previously noted, "[T]he Mobile Home Park Act prevails over the [UORRA] when the provisions of the two acts conflict." *Mulvaney*, 1996-NMSC-037, ¶ 8 (citing Section 47-10-18).

{14} Finally, Four Hills argues that Defendant had actual notice and therefore, "[t]he goal of the notice delivery requirements has been met." In support, Four Hills notes that "[p]ursuant to the [U]ORRA, notice is accomplished when the party intended to be put on notice has actual notice of the matter." *See* § 47-8-13(A)(1), (2) (stating that a person has notice of a fact "if he has actual knowledge of it [or] he has received a notice or notification of it"). However, the same statutory provision goes on to say that "[n]otwithstanding any other provisions of this section, notice to a resident for nonpayment of rent shall be effective only when [it complies with the service requirements specified by statute]." Section 47-8-13(D). Accordingly, the UORRA does not support Four Hill's position that actual notice will suffice in the absence of proper service.

{15} What is more, our Supreme Court has previously determined that a landlord must strictly comply with the requirements of Section 47-10-3 for a notice of termination to be effective, even if the tenant has actual notice. *See Mulvaney*, 1996-NMSC-037, ¶¶ 9-13. While *Mulvaney* was concerned with a notice that failed to state the reason for the termination of the tenancy, the policy reasons that animated

9

the Court's conclusion that strict compliance is required apply equally to service of the notice. To give force to a notice where a landlord has provided less service than required by the Mobile Home Park Act would fail to "provide the special protection against unjustified eviction which is expressed by the clear language of Section[] 47-10-3 . . . for the benefit of inherently vulnerable mobile home tenants." *Mulvaney*, 1996-NMSC-037, ¶ 13. As in *Mulvaney*, we conclude that a landlord must strictly comply with Section 47-10-3(B) of the Mobile Home Park Act for the notice of nonpayment to be effective.

{16} It is undisputed in this case that Four Hills did not comply with the service requirements in Section 47-10-3(B) because it posted the notice but did not also send a copy of the notice by certified mail to Defendant. We therefore reverse the judgment in favor of Four Hills on its petition for termination of tenancy.

**II. Defendant Has Not Shown Error in the Trial Court's Denial of His Counterclaims**

{17} Defendant asserted two counterclaims in the metropolitan court, one seeking a civil penalty for unlawful utility charges under Section 47-10-23, and another for violation of the Unfair Practices Act, NMSA 1978, § 57-12-2(D)(15) (2019) based on allegedly false statements made in connection with Four Hills' attempt to collect a debt. On appeal, Defendant generally argues that the metropolitan court erred in denying both counterclaims. However, Defendant's briefing contains no more than a bald claim that he had been charged unlawful fees. Defendant has not offered any

citation to the record demonstrating what evidence was offered in support of his counterclaims and no argument or legal authority demonstrating why Defendant believes the metropolitan court erred in light of the evidence presented at trial. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (stating that the burden is on the appellant to clearly demonstrate that the trial court erred); *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (stating that there is a presumption of correctness in the rulings or decisions of the trial court, and the party claiming error bears the burden of showing such error). Defendant has not met his burden to demonstrate error on the part of the metropolitan court.

**CONCLUSION**

{18}     We reverse the judgment in favor of Four Hills on its petition for termination of tenancy and affirm judgment in favor of Four Hills on Defendant's counterclaims.

{19}     **IT IS SO ORDERED.**

_____
                                    **MEGAN P. DUFFY, Judge**

**WE CONCUR:**


_____
**J. MILES HANISEE, Judge**


_____
**JACQUELINE R. MEDINA, Judge**

11